Frank, Plaintiff in error, vs. The State, Defendant in error.

*September 26 — October 13, 1896.*

*Criminal law and practice: Homicide: Degrees: Depraved mind: Refusal to hear arguments: Defendant as assailant: Self-defense: Taking gun to jury room: Defendant as witness: Evidence: Instructions: Immaterial error.*

1. To cock and discharge a loaded shotgun in a small room containing ten or eleven persons scattered about is an act evincing "a depraved mind, regardless of human life," within the meaning of the statute defining murder in the second degree (sec. 4339, R. S.).

2. In a prosecution for murder where there was evidence to warrant a verdict of murder in the second degree, the error if any in also submitting the case to the jury under sec. 4362, R. S. (defining manslaughter in the fourth degree), was not prejudicial.

3. In such a case a failure to submit the case to the jury under sec. 4354, R. S. (defining manslaughter in the third degree), was not error, in the absence of a request so to do.

4. It was not an abuse of discretion to refuse to hear arguments on each of the several grounds on which a motion to set aside the verdict and for a new trial was based, where counsel had been given full hearing upon all the questions raised thereby during the progress of the trial. *Ohms v. State*, 49 Wis. 415, distinguished.

5. In a prosecution for murder it appeared that the defendant was visiting at the house of V., having with him a loaded gun; that as soon as P., with whom defendant had had trouble, entered the room, the latter raised his gun toward him and cocked it; and that P. at once disclaimed all intent to injure the defendant, but the latter did not desist. P. had no weapon, and there was no evidence that he entered the room with intent to injure the defendant, or that he knew the defendant was there. *Held*, that the defendant was the assailant.

6. In such a case it was not error to instruct the jury to the effect that, if the defendant was at fault in creating the situation of danger, his right of self-defense did not arise until he had done all that reasonably could be done by him to avoid the necessity of killing his assailant, in order to protect himself; or to refuse instructions which were applicable to a case where the defendant was assailed, or which made the honesty and good faith of the defendant's belief in the necessity of shooting in self-defense the test whether the killing was excusable.

7. The refusal of an instruction to the effect that the jury must not consider the reasonableness of the defendant's belief that P. intended to injure him from their own standpoint, nor from the standpoint of an ideal man, but from the defendant's standpoint at the time, was not error, where the court did instruct them that "it is insisted on the part of the defendant that whatever the defendant did in the house of V. when P. arrived there was done by the defendant to protect himself against the dangers that he had reasonable ground to believe to be imminent to his life or limb from the attack of P.," followed by a correct statement of the defendant's right to act in self-defense.

8. The defense having claimed that the gun was accidentally discharged at the time of the homicide, and the court having permitted it to be taken to the jury room as it was at that time, it was not error to refuse to allow the lock, which defendant's counsel had detached from the gun, to be taken there so detached.

9. In such case it was not error to require the defendant on cross-examination to answer whether the gun would have been discharged without raising the hammer and pulling the trigger.

ERROR to review a judgment of the circuit court for Adams county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

*C. A. Fowler*, for the plaintiff in error.

For the defendant in error there was a brief by the·*Attorney General* and *John L. Erdall*, Assistant Attorney General, and oral argument by *Mr. Erdall*.

CASSODAY, C. J.   The plaintiff in error was convicted of murder in the second degree for having shot and killed Joseph Vachuta, a boy fifteen years of age, on the evening of April 13, 1895, and to reverse that judgment he sues· out this writ of error.   There is evidence in the record tending to prove that *Frank* did not, at the time, intend to kill the boy, but that he did kill him while attempting to shoot and kill one James Polivka; that *Frank* and Polivka were both farmers, having adjoining farms, and had, for some weeks prior to the shooting, been having trouble over a line fence; that each had threatened to kill or injure the other; that John Vachuta was the neighbor and friend of both of them; that on the evening in question *Frank*, while returning from his work, went into Vachuta's house, having his loaded shotgun with him at the time; that upon entering the room from the south side of the house he set down his gun near an inside door, and entered into conversation with Vachuta about Polivka; that Vachuta and his family were about to take supper, and he invited *Frank* to eat with them, which he declined; that Vachuta's family consisted of himself and wife and six or seven children, including the deceased; that while they were eating supper Polivka stopped at Vachuta's to get him to go with him to a neighbor's by the name of Shipley, to play cards; that when Vachuta's daughter stated that Polivka was coming in *Frank* jumped up, grabbed his gun, stepped back near the door leading into the east room, partially raised his gun and cocked it, and said, "Let him come;" that, as Polivka came in the door on the south side

of the house mentioned, *Frank* stood in the door between that room and the east room, and, aiming his gun at him, told him to come no further; that Polivka, who had no weapon, then said he had not come there to fight, nor to hurt him, nor to do anything, and said, "For God's sake, what is the matter with you? Are you crazy?" that Polivka took a short step forward, apparently to get by the muzzle of the gun, when *Frank* said, "Do not come another inch further, or I will kill you;" that Polivka then remonstrated that he did not come there for any fuss, or to hurt him, when *Frank* made a motion as if to get his gun up higher; and that Polivka jumped forward, grabbed hold of the muzzle of the gun, and pushed it down and to the side, and just then the gun was discharged, and the lamp went out, leaving the room in darkness, and when light was restored it was found that the boy Joseph was killed. This brief summary of the terrible tragedy is sufficient to enable us to consider the several errors assigned.

The trial court, among other things, instructed the jury to the effect that the plaintiff in error was not only charged of committing murder in the first degree, but was also charged of committing murder in the second degree, and of manslaughter in the fourth degree, as defined in the instructions to the jury; and that it was for them to determine whether he was or was not guilty of any of those offenses beyond a reasonable doubt; and that by the statutes the killing of a human being without the authority of the law, by shooting, was either murder, manslaughter, or excusable or justifiable homicide, according to the facts and circumstances of each case. This is, in effect, the language of the statute. R. S. sec. 4337. No exception was taken to any of such portions of the charge.

1. Error is assigned because the court submitted the case to the jury on the charge of murder in the second degree. The statute declares that: "Such killing, when perpetrated

by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed, or of any human being, shall be murder in the second degree." R. S. sec. 4339. The contention of counsel is to the effect that there is evidence in the record tending to prove that *Frank* discharged the gun with the "premeditated design to effect the death of" Polivka, and hence that the case was properly submitted to the jury to determine whether he was guilty of murder in the first degree as prescribed by the statute (R. S. sec. 4338). *Bernhardt v. State*, 82 Wis. 23. This being so, and the jury having, in effect, acquitted him of that offense, it is contended that there is no evidence to support the verdict of "murder in the second degree," as prescribed in the section of the statute quoted. It is conceded that the killing was "perpetrated by" an "act imminently dangerous to others," but it is contended that such act of killing did not evince "a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed, or of any human being;" and hence it is contended that the verdict is not supported by the evidence. As observed in the statement, although the loaded gun was raised and cocked before Polivka touched the muzzle, yet it was not discharged until after Polivka had pushed the muzzle of the gun down and to the side. Manifestly, the gun was not pointed at Polivka when it was discharged; and there is no pretense that *Frank* intended to kill the boy, or any of the Vachuta family. If the jury believed that *Frank* discharged the gun, knowing that it was not then pointed at Polivka, then they were justified in finding that the killing was "without any premeditated design to effect the death" of any person. And yet it must be conceded by all fair-minded men that to cock and discharge a loaded shotgun in a small room, containing so many people scattered as they were, evinced "a depraved mind, regard-

less of human life," as the same has been repeatedly defined by this court. *Hogan v. State*, 36 Wis. 226; *Bernhardt v. State, supra; Giskie v. State*, 71 Wis. 612; *Terrill v. State*, 74 Wis. 284; *Odette v. State*, 90 Wis. 258. The verdict is abundantly supported by the evidence.

2. If it was error to submit the case to the jury under sec. 4362, R. S., for want of evidence that the killing was done "in the heat of passion," then it is very evident that it was not prejudicial error, since it gave the jury an opportunity to convict the accused of manslaughter in the fourth degree, instead of murder in the first or second degree.

3. If counsel is correct in claiming that it was error to so submit the case to the jury under sec. 4362, R. S., then there is no ground for claiming that it was error not to submit the case to the jury under sec. 4354, R. S., defining manslaughter in the third degree, for the like want of evidence that the killing was done "in the heat of passion." But counsel is in no position to assign error for such failure to submit, since he made no request to so submit. *Manning v. State*, 79 Wis. 178; *Zoldoske v. State*, 82 Wis. 580; *Winn v. State*, 82 Wis. 571; *Odette v. State*, 90 Wis. 258, 263.

4. Error is assigned because the court refused to hear further oral argument upon each of the several grounds upon which the motion to set aside the verdict and grant a new trial was based. In response to the request to be so heard, the court said: "All of the questions involved as to the instructions given were submitted, and counsel presented his views to the court, and the court passed upon them before the case was submitted to the jury. As to the requests submitted by the defendant for instructions, they were submitted by defendant's counsel before the case was summed up to the jury, and defendant's counsel submitted his authorities, which the court read, upon the several requests, and the court heard him. In view of the facts as they have occurred, the court gave counsel for the defend-

ant full hearing upon all the questions now raised by these exceptions." For such reasons the trial court refused such request and overruled such motion. "With reference to the suspension of the sentence," the trial judge said, "I am satisfied in my mind that the verdict is sustained by the evidence, and that the court is not called upon to suspend sentence." Manifestly the trial judge was fully advised of the questions involved in the motion to set aside the verdict and for a new trial. There is nothing in the record to indicate that he refused to hear counsel say anything instructive to the court. A trial judge necessarily has a broad discretion as to the length of time counsel shall be allowed to argue such motions, and we cannot say that there was any abuse of such discretion in the case at bar. *Manning v. State*, 79 Wis. 178; *Schuster v. State*, 80 Wis. 121; *Zoldoske v. State*, 82 Wis. 609. The case is clearly distinguishable from *Ohms v. State*, 49 Wis. 415, where the trial judge refused to hear the motion.

5. The case was tried on the part of the accused on the theory that what he did was in self-defense, and hence that the killing was excusable homicide. On that branch of the case the court charged the jury that "The law does not require that a party must establish as a fact that the danger he apprehended was actual, and in fact existed; but, if the accused had reasonable grounds to apprehend a design that his life was in danger, or that there was reasonable ground to apprehend that great personal injury was to be done him, then he had a right to act upon such apprehension, though it may turn out that he was not in actual danger of life or great personal injury. In this connection mention has been made as to the duty of defendant to employ all reasonable means to avoid the taking of life by escaping from the assailant or retreating. The taking of human life is a matter of such deep significance that it cannot be justified by some slight appearance of danger, and, if the defendant was in

fault in creating the situation of danger, his right of self-defense does not arise until he shall have done all that reasonably could be done by him to avoid the necessity of killing his assailant in order to protect himself." Exception is taken to the last sentence on the ground that *Frank* was not bound to retreat at all, nor to endeavor to escape, but was excusable in doing as he did. This court has, perhaps, gone as far as any court in excusing a person from fleeing from his assailant. *Bird v. State*, 77 Wis. 281-283; *Perkins v. State*, 78 Wis. 555-557. The difficulty with the contention of counsel on this point is that it has no application to the evidence in the case. Polivka had no weapon. There is no evidence that he entered the house with any intent to injure *Frank* or any one; nor that he knew *Frank* was in the house when he entered. The moment he entered, *Frank* was in the act of raising his gun towards him, and cocking it. He at once disclaimed all intent to injure, but *Frank* did not desist. Thereby *Frank* became the assailant, and what Polivka said and did was in self-defense. A similar contention was expressly overruled in *Clifford v. State*, 58 Wis. 491. See, also, *Housh v. State*, 43 Neb. 163.

6. Error is assigned because the court, among other things, charged the jury that "In criminal cases the defendant enters upon the trial with the presumption of innocence in his favor, and the burden of proof is upon the state to establish his guilt, and the evidence must be sufficient to establish in your judgment his guilt beyond all reasonable doubt. As long as you have a reasonable doubt of the defendant's guilt, it is your duty to acquit him. A reasonable doubt which entitles an accused person to an acquittal is a doubt of guilt reasonably arising from all the evidence in the case. Proof is said to be deemed to be beyond all reasonable doubt when the evidence is sufficient to impress the judgment of ordinarily prudent men *with a conviction* on which they would act *without hesitation* in their own

Frank vs. The State.

*most important concerns and affairs of life.* And if you have any such reasonable doubt, you must give him the benefit thereof, and acquit him." These instructions are clearly distinguishable from the instruction criticised by Mr. Justice WINSLOW in *Emery v. State,* 92 Wis. 152, relied upon by counsel. We do not think the instructions here given are obnoxious to the criticism there made.

7. Exception is taken because the court charged the jury that "The law of the state defines excusable homicide to be a homicide committed by accident and misfortune in lawfully correcting a child or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent; *or by accident and misfortune in the heat of passion upon any sudden and sufficient provocation, or upon a sudden combat without any undue advantage being taken, and without any dangerous weapons being used, and not done in a cruel and unusual manner.*" The first part of this instruction was requested by the counsel for the accused, and is substantially in the language of the first half of sec. 4367, R. S., and the balance of the instruction consists of the balance of that section, and is manifestly more applicable to the case than the part requested.

8. Exception is taken because the court refused the following instruction: "You are instructed that when there is reasonable ground for a person to apprehend that another designs to do him some great personal injury, and there is reasonable cause for his believing that there is imminent danger of such design being accomplished, then such person may lawfully, in self-protection, use any means of defense his situation and all the circumstances make it reasonable for him to infer is necessary to his safety, even to the use of a deadly weapon; and, if the evidence establishes that *Frank* had reasonable ground to apprehend that Polivka intended to do him some great personal injury, and that there was

reasonable cause for his believing that there was imminent danger of such design being accomplished, and that *Frank's* situation, under all the circumstances in evidence, made it reasonable for him to infer that it was necessary to his defense for him to use the gun, as you believe from the evidence he did use it, and that he had no intent but the defense of his person in so using it, and that in so using it he used such caution as an ordinary man would use under the same circumstances, then the homicide was excusable, and you will return a verdict of not guilty." From what has been said it is manifest that this instruction is not fairly applicable to the evidence. Besides, the court did charge the jury that " The defendant claims that at the time of the homicide he was exercising this right of self-defense as against Jim Polivka, and that while so exercising this right the gun in his hand was suddenly pushed aside by Polivka, and that the gun was then accidentally discharged, whereby the boy Joseph Vachuta was killed. You must determine upon all the evidence under the law whether the shooting of Joseph Vachuta occurred while the defendant had reasonable ground to apprehend a design that his life was in danger, or that there was reasonable ground to apprehend that great personal injury was to be done him. If you find the defendant was acting in self-defense as herein defined, and was justified in doing as he did, then you must give him the benefit thereof, and acquit him."

9. Error is assigned because the court refused the following instruction: " You are also instructed that if a man honestly and without fault or carelessness believes the facts to exist which render self-defense necessary, it is lawful for him to act on such appearances, and, if he thus kills a human being when there was in truth neither necessity nor occasion for it, still the law imputes to him no crime, and the killing is excusable." This instruction would have made the honesty and good faith of *Frank's* belief in the neces-

sity of the shooting in self-defense the test, whereas the court charged the jury on that point as stated in the fifth point above considered, and, we think, correctly.

10. Error is assigned because the court refused an instruction to the effect that the jury must not consider the reasonableness of *Frank's* belief that Polivka intended to injure him from their own standpoint, nor from the standpoint of an ideal man, but from *Frank's* standpoint at the time. It is enough to say that the court did charge the jury that " It is also insisted on the part of the defendant that whatever the defendant did in the house of Vachuta when James Polivka arrived there was done by the defendant to protect himself against the danger that *he had reasonable ground to believe to be imminent to his life or limb from the attack of James Polivka;* " and further charged them upon the same point as stated in the fifth point above considered. The seventh instruction requested was properly refused for the same reason.

11. The gun, as it was at the time of the shooting, was in evidence, and the court consented that the jury be allowed to take it to their room while in consultation. We perceive no error in refusing to allow the lock, which the defendant's counsel had detached from the gun, to be taken so detached to the jury room. To have done so would simply have enabled each juryman to speculate as to whether the gun was discharged accidentally or by design.

12. We perceive no error in requiring the accused on cross-examination to answer whether the gun would have been discharged without raising the hammer and pulling the trigger. He had voluntarily made himself a witness, and was subject to legitimate cross-examination, as other witnesses. R. S. sec. 4071; *Yanke v. State,* 51 Wis. 464.

We find no material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.