LILLYSTROM, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 5—June 1, 1911.*

*Criminal law: Homicide: Murder in second degree: Absence of premeditated design: Evidence: Minutes of inquest: Harmless error.*

1. Upon a trial for murder the admission in evidence of the minutes of defendant's testimony given at an inquest, denying all knowledge of how the deceased met his death, in connection with testimony of the justice who held the inquest that defendant actually did so testify, was not prejudicial to defendant, especially where his denial of knowledge was conclusively established by other evidence and there was no proof to the contrary.

2. Defendant and the deceased went out together to hunt deer and after killing one divided it into two parts and also divided the hide. Defendant returned alone, stating that he parted with deceased at a certain point and did not meet him again. He accompanied searching parties and showed them where the deer was killed and where he and deceased parted, but did not lead them to the body, which was finally found, penetrated by two rifle bullets, either one of which would have produced death. There was evidence tending to prove that while ostensibly aiding in the search defendant left those who were with him and removed the body from where it lay to a place of greater concealment. At an inquest he denied all knowledge of how deceased was killed, but afterward admitted that he shot him, claiming that he did so in self-defense and only after deceased had shot at and tried to kill him. No motive was shown, but there was evidence of intoxication to some extent on the part of both, and it was apparent that they had quarreled. *Held,*

that the evidence warranted a conviction of murder in the second degree (defined as a homicide "perpetrated by any act imminently dangerous to others and evincing a depraved mind regardless of human life, without premeditated design to effect the death," etc.), the jury being justified, while disbelieving defendant's testimony, in giving him the benefit of the doubt as to premeditated design.

ERROR to review a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The plaintiff in error, hereinafter called the defendant, was charged with the crime of murder in the first degree for the killing of one Louis Cochenour on November 7, 1909. He was tried and found guilty of the crime of murder in the second degree and sentenced to twenty years' imprisonment in the state prison. The defendant and the deceased started deer hunting on the morning of November 7th. It appeared that they killed a deer, dressed it, divided it into two parts, and also divided the hide. The defendant returned alone, stating that the deceased had left him at a certain point and that thereafter they did not meet. Searching parties were organized and hunted for the deceased for three days. They were accompanied in each instance by the defendant, who led them to the place where the deer was killed and to the place where he claimed to have parted with the deceased. On the third day the body of the deceased was found by one of the searchers. The body had been penetrated by two rifle bullets, either one of which would have produced death. There was evidence tending to show that the defendant purposely kept the searchers away from the place where the body was found, and there was some evidence tending to show that while the search was being made the defendant left the other searchers and removed the body from where it originally lay to a place of greater concealment a short distance away. An inquest was held over the body where it was found, and the defendant testified that he had no knowledge of how Cochenour met his death. Thereafter he admitted and testified on the trial that

he shot Cochenour, but that he did so in self-defense to save his own life and because Cochenour had shot at him and was about to do so again when defendant killed him. The evidence of the defendant was to the effect that when he started out hunting in the morning he had a pint of whisky and that Cochenour had a quart of whisky and had drank some before they left, and that both parties drank quite freely before the shooting took place.

The errors assigned are that the court erred in permitting the minutes of the coroner's inquest to be read and received in evidence; in charging the jury that it might find the defendant guilty of murder in the second degree; and in refusing to set aside the verdict of conviction of murder in the second degree.

*C. F. Morris,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

BARNES, J.   An inquest was held over the body of the deceased at the place where it was found. The evidence was taken down in longhand by the justice who held the inquest, and he admitted that he did not get all of it. The defendant testified at such inquest and denied all knowledge of how Cochenour met his death. The testimony was produced and read on the trial. The only part of it that could be at all prejudicial was that which denied knowledge of how the deceased met his death. The statement was not subscribed by the witness, as required by sec. 4790, Stats. (1898), and it is argued that it was error to permit the testimony to be read. No prejudicial error, if indeed any error, was committed in receiving the minutes in evidence. The justice who wrote them testified that the statements therein contained were actually made by the defendant. Other witnesses did likewise. The defendant accompanied searching parties for three days

who were endeavoring to find Cochenour. During this time he persistently and consistently denied any knowledge of Cochenour's death and carefully avoided leading the searchers to the place where he knew the body was. The denial of knowledge of the death by the defendant was conclusively established by evidence aside from the minutes of the justice, and there was no testimony to the contrary. Any prejudicial admission or statement made by the defendant was competent evidence against him. Receiving the written memorandum made by the justice in connection with his statement that the defendant had testified to what such memorandum contained, could work no prejudice to the accused.

The second error argued is that the court should not have submitted the charge of murder in the second degree to the jury, because there is no evidence in the record to warrant such submission. The court submitted murder in the first and second degrees and manslaughter in the second degree, and the defendant was convicted of murder in the second degree. The only direct evidence as to how and why the killing was done was given by the defendant, and he testified to a state of facts which made out a complete case of self-defense and which if believed by the jury would no doubt have resulted in a verdict of acquittal. The jury evidently did not believe the defendant's story and it was justified in not doing so. He concealed the killing. He not only did this, but he lied about it, and he committed perjury in persisting in his denial. Furthermore, the jury might well have been convinced that, while he was ostensibly aiding in the search for the body, he left those who were with him and removed it from where it lay to a place of greater concealment. Under these circumstances, the killing having been admitted, a verdict of murder in the first degree might well have been rendered. Concealment of homicide is strong evidence of guilt. *Hedger v. State,* 144 Wis. 279, 291, 128 N. W. 80.

It is argued, however, that because a conviction for murder

in the first degree might stand, the evidence does not warrant a conviction for murder in the second degree. By sec. 4339, Stats. (1898), a killing is murder in the second degree "when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed or of any human being." The jury could not well avoid the conclusion that his act was imminently dangerous, because the deceased was shot twice with a rifle and either wound would have produced death. It might well have reached the conclusion also that the act showed that the defendant had a depraved mind and had no regard for human life, but it was by no means so clear that the jury was warranted in finding that the act was done without premeditated design to kill. The killing took place in the woods, and the jury having disbelieved, as it well might, the statement of the defendant as to what led up to the killing, the record is rather barren of facts tending to either prove or disprove premeditated design, except as we have the fact of the killing itself. However, there are two rather significant circumstances bearing on the question. No motive whatever for the homicide was shown. The deceased took a quart of whisky with him and the defendant a pint and both drank quite freely, and the defendant admitted that he was a little drunk. The jury, while convinced that the homicide was neither excusable nor justifiable, probably entertained some doubt upon the question of whether the killing was premeditated, and accorded to the defendant the benefit of such doubt and found him guilty of the next lower degree of homicide. The facts in the case are quite similar to those in *Spick v. State,* 140 Wis. 104, 121 N. W. 664, where a conviction for murder in the second degree was sustained. The two facts relied on to support the conviction there were lack of motive and evidence tending to show a prolonged debauch on the part of the accused. The evidence of drunkenness was slightly stronger in the *Spick*

*Case* than it is in the present case, but there as here it was a matter of inference from other facts. The court no doubt had the *Spick Case* in mind when it submitted murder in the second degree. It is true that the defendant in that case denied the killing altogether, but we do not see how this fact can make any difference. There as here the deceased was shot to death, and there the jury must have found that the accused did the shooting. Here the defendant finally admitted it. It seems illogical to say that premeditated design was shown here because the defendant admitted the killing, while in the other case it might not exist because the killing was denied. If the jury believed the testimony of the defendant, then it showed intent, because he testified in substance that he shot to kill, in self-defense. But the jury was not concluded by this statement. In addition to the lack of motive and evidence of intoxication, it is quite apparent here that there was some quarrel between the parties. The defendant says as much, but also says that the deceased provoked it and carried it on until the defendant was forced to shoot in self-defense. After killing a deer they dressed it and cut it into two equal parts. This in itself might not be very significant, but not content with this they cut the hide into two parts. If they had been on friendly terms at this time we would naturally expect them to refrain from mutilating the hide and to sell it as a whole and divide the proceeds. So the jury might reason that these parties who started out as companions and on good terms, by reason of the excessive use of liquor became involved in a quarrel about some trifling matter, and that the defendant was stupid from or frenzied by drink and did not shoot with that premeditated design to effect death that is necessary to constitute murder in the first degree, and in fact that he was in no condition to form such intent. There certainly was as much warrant for a jury finding murder in the second degree here as in *Eckert v. State,* 114 Wis. 160, 89 N. W. 826, or *Frank v. State,* 94 Wis. 211, 68 N. W. 657, or

*Johnson v. State,* 129 Wis. 146, 108 N. W. 55, where convictions for second degree murder were sustained. The same is true of the cases of *Terrill v. State,* 95 Wis. 276, 70 N. W. 356, and *Sullivan v. State,* 100 Wis. 283, 75 N. W. 956, although the value of those cases as authority is lessened by the fact that a distinction was made therein between "previously formed intent" and "premeditated design," which has since been repudiated in *Perugi v. State,* 104 Wis. 230, 80 N. W. 593, and other cases. The case was one where the jury might conclude from the evidence beyond a reasonable doubt that murder either in the first or second degree had been committed, and, not being wholly convinced that the greater offense had been perpetrated, it gave the defendant the benefit of the doubt and found the lesser, as it was its duty to do. *Spick v. State,* 140 Wis. 104, 124, 121 N. W. 664; *Ryan v. State,* 115 Wis. 488, 92 N. W. 271; *Miller v. State,* 139 Wis. 57, 81, 119 N. W. 850.

*By the Court.*—Judgment affirmed.