STATE OF IOWA v. LEO KRAMPE, Appellant.

Criminal law: MURDER: EVIDENCE. The evidence on this prosecution
1     for murder in the first degree is reviewed and held sufficient to sustain a verdict of guilty.

Same: JURORS: DISQUALIFICATION. Jurors unacquainted with defend-
2     ant who had formed an opinion regarding his guilt or innocence, based upon newspaper reports, were not disqualified, where it appeared from their examination that the opinions thus formed were not so fixed as to preclude their rendering a fair verdict upon the evidence and instructions of the court:

Same: EVIDENCE: EXPLANATION OF SAME. Where a witness had testi-
3     fied that in a conversation with defendant he had asked him why he wanted to kill deceased and then steal her cattle, and also stated that he made the inquiry in a joking way and was answered in the same manner, exclusion of a further inquiry as to whether it was not a standing joke to ask people in that locality why they killed deceased, in the absence of any showing of the particular locality or those engaged in the idle talk, was not erroneous.

New trial: MISCONDUCT IN ARGUMENT. It is not reversible error, be-
4     cause referring to the defendant's failure to testify, for the county

attorney to refer to certain uncontradicted items of evidence, on the ground that the defendant was the only person who could contradict or explain the evidence; where it appeared that at least one other person was cognizant of the facts, and possibly others.

Same: REASONABLE DOUBT: INSTRUCTION. Where the court defined reasonable doubt as a doubt arising fairly and naturally from a consideration of all the evidence; that if, after such consideration, the jurors are not firmly and abidingly satisfied of the guilt of defendant they have a reasonable doubt and must acquit, the further paragraph of the charge that the state is not required to prove guilt beyond all doubt, that is absolute certainty; that moral certainty is all the law requires, such certainty as you would act upon in the graver and more important affairs of life, even if erroneous when standing alone, because failing to limit the doubt to such as would arise in similar cases, was not misleading in the connection here used.

Same: MURDER: USE OF DEADLY WEAPON: PRESUMPTIONS. Where deceased was killed by means of a deadly weapon, the presumption, in the absence of evidence explaining the cause of death, is that deceased was murdered; but there is no presumption that the murder was committed with deliberation and premeditation, unless the killing was done in the commission of another crime.

Same: CONSPIRACY: INSTRUCTION. Where the evidence tended to show that defendant and another conspired to kill deceased, and that defendant and others united in stealing her property, an instruction that if defendant conspired with another to kill deceased. and to steal her property, and that if defendant aided and abetted in such killing he would be guilty the same as if he had done the killing himself, was not erroneous because failing to limit the conspiracy to the one concerned in the killing; in view of a further instruction directing the jury to limit their consideration of the case to the evidence.

*Appeal from Jasper District Court.*—HON. BYRON W. PRESTON, Judge.

TUESDAY, APRIL 8, 1913.

THE accused was convicted of having committed murder in the first degree, and appeals.—*Affirmed.*

*E. J. Salmon* and *H. Silwold,* and *Parsons & Mills,* for appellant.

*George .Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, and *Ross Mowry,* County Attorney, for the State.

LADD, J.—On the 24th of February, 1911, Matilda Hermsmeier was found on the floor at her home dead, with a 32 caliber bullet in her brain. She had lived alone three-quarters of a mile north and a little east of Baxter since her mother's death, some six or seven years previous and was last seen in Baxter two weeks before. Some time afterwards the defendant was subpoenaed to appear before the grand jury, and upon being questioned by a detective and the deputy sheriff, with whom he had ridden from his home, related, in substance, that he had tried to borrow money of deceased, and later had purchased nine head of cattle from her, but thereafter stated that what he had said previously was almost wholly untrue and that he had been at her house February 11, 1911, and then saw her dead on the floor; that he returned February 15th shortly before daylight; that her body was still lying on the floor; that he went to Baxter, and, having hired two horses and a man, returned and drove the cattle to his place. Thereafter he made another statement that he had tried to borrow money of her February 7, 1911, and failed; that subsequently he had a talk with one Gist, who suggested that he would get rid of Miss Hermsmeier; that defendant should drive the cattle away, and that they should divide the money for which these were sold; that he (defendant) went to her house shortly after dark on February 11th to see if Gist had done what he proposed, and then saw deceased on the floor dead, and a lamp on the table burning; that he again visited the place just before daylight February 15th, when he observed her as before, and in the afternoon

1. CRIMINAL LAW: murder: evidence.

drove the cattle away and subsequently sold them for $215, of which he had paid $100 to Gist. These several statements were reduced to writing and signed by defendant. Gist denied having been acquainted with defendant, and also that he had been concerned in the transaction.

Other evidence tended to show that defendant had purchased 32 caliber bullets about February 1st; that he had stolen the nine cattle February 15th; that he made the several statements voluntarily and also tended to corroborate the details of the last of these, other than the portion tending to implicate Gist. In behalf of defendant, the evidence tended to show that deceased was about her premises February 14th; that February 15th defendant attended a sale some distance from the place of deceased; and that a man was seen near her barn on February 21st.

Not all the details have been recited, but enough to indicate that the evidence was sufficient to sustain the verdict. That he stole the cattle was conclusively established; and the circumstances in connection with defendant's admissions tended to single him out as the perpetrator of the offense, the commission of which by some one was established otherwise than by his confession. We are not inclined to interfere with the verdict.

II. Two members of the regular panel of jurors were challenged for cause in that they had formed or expressed an unqualified opinion of the guilt or innocence of defendant which would require evidence to change. Neither of them had been acquainted with him. Both were without personal bias. Anderson was a traveling man and testified that, from what he had heard and read, he had formed an opinion as to the guilt or innocence of defendant, and that ordinarily his opinions were pretty strong or fixed; that he based his opinion on newspaper reports, but that these did not refer to the evidence; and his examination, as a whole, indicated that he could, upon hearing the testimony and the instructions of the court, base

2. JURORS: disqualification.

a verdict thereon and not upon any preconceived notions that he may have had concerning the guilt or innocence of the accused. The cause had been tried twice before in the same county, and it could not reasonably be expected that men of intelligence, living in the community, could be found for jury service who had not heard and read something of the transaction. As said in *State v. Rohn,* 140 Iowa, 640: "A person is qualified if, notwithstanding any impressions he may have received from reading or hearing, he appears to be fair-minded and free from prejudice and able and willing to render an impartial verdict." See, also, *State v. Hudson,* 110 Iowa, 663; *State v. Hassan,* 149 Iowa, 518.

While some parts of the examination indicated that Anderson's preconceived information might interfere with returning a true verdict, yet upon considering his examination as a whole, as should be done (*State v. Foster,* 91 Iowa, 164), it is manifest that he did not entertain an unqualified opinion as to defendant's guilt or innocence. Clark had never seen the defendant until the trial, but had read about the case and talked with those who claimed to know the facts, including a juror on the second trial, but he had taken very little part in the discussion. He had expressed some opinion, but thought his mind was not made up so that evidence of a positive nature would not change it. Though saying that evidence would be required to remove his opinion, he thought he could render a true verdict on the evidence and instructions given by the court, and said he did not see any reason why he could not. The answers of neither Anderson nor Clark bring the case within the rule of *State v. Crofford,* 121 Iowa, 399, followed in *State v. John,* 124 Iowa, 230. Neither served on the jury. There was no error in overruling the challenges for cause.

III. One Thorpe testified to having a conversation with defendant two or three days after the body was found in

which he asked him "what he wanted to go and kill that old woman for and then steal her cattle." His answer was, "Most anybody would do it under the same circumstances." On cross-examination the witness said he was "simply joking and Leo (defendant) answered in a joking way." "Q. And it was a standing joke up there, wasn't it, to ask this fellow or that fellow why he killed Miss Hermsmeier?" This was objected to as "calling for the opinion and conclusion of the witness and hearsay" and sustained; the court saying he did not "see that it made any difference whether anybody else said that or not." Possibly, had the question been more definite, an answer might have had a tendency to have explained the conversation, if any were needed; but, as neither the locality where nor the associates among whom this talk was indulged was indicated, the ruling ought not to be disapproved.

*3. SAME: evidence: explanation of same.*

IV. In the course of his opening argument to the jury, the county attorney said, in substance: "There were only two living witnesses testified as to whether these written instruments were voluntary or not; the evidence of Harry Grove is substantially undenied, and, if his evidence is false, they would have adduced evidence to show that it is false." To this statement the defendant excepted, for that he was the only other witness who was cognizant of the fact, and for this reason what was said necessarily referred to his failure to testify. But such a conclusion does not necessarily follow. According to the evidence, the county attorney was present when the first two statements were made, and, for all that appears, he or others may have been present when the last was made.

*4. NEW TRIAL: misconduct in argument.*

In *State v. Seely,* 92 Iowa, 488, the county attorney referred to the fact that the record did not show any evidence denying the sexual intercourse, the promise of marriage, or the seduction; and it was contended that, inasmuch as the accused was the only person who could have given evi-

dence on these matters, this amounted to a reference to defendant's failure to testify in his own behalf, but the court held otherwise.

In *State v. Snider,* 119 Iowa, 15, the court said that: "It does not follow that the county attorney may not, in commenting on the evidence in the record, refer to the fact that in certain respects it is not contradicted. And this is true even though it appears that, as to certain alleged occurrences, the defendant is the only person who could have taken the stand and testified in denial. To hold otherwise would be to forbid any reference in argument to the weight or importance that should be attached to uncontradicted testimony, and practically restrict the county attorney to a discussion of the controverted testimony alone. Surely such a meaning is not to be attached to the statute."

In *State v. Hasty,* 121 Iowa, 507, the county attorney remarked in argument that "there has been no witness on the stand contradicting the very material evidence of Mrs. Hasty, and no witness has been on the stand as to the cow barn transaction"; and it was contended that as the only person who could contradict or go on the stand with relation to the matter was defendant, as the other was dead, this must have referred to defendant's failure to testify, but the court held otherwise, saying: "The trouble with this is that an argument is necessary to show the connection. In *State v. Baldoser,* 88 Iowa, 55, the reference was direct. But the state has the right to call the jury's attention to the fact that certain evidence is uncontradicted, even though the accused may be the only person who might have contradicted it, and the statement amounted to no more than an assertion that Mrs. Hasty's evidence was uncontradicted." Even though the detective was dead, at least one other than the witnesses mentioned, besides the defendant, might have been present; and, this being so, what was said amounted to no more than an assertion that the evidence of the statement, being voluntary, was uncontradicted. What was said did not amount to misconduct.

V. Exception is taken to the last paragraph of the following instruction:

The term 'a reasonable doubt,' as used in these instructions, means what the words imply—a doubt founded in reason. It does not mean a captious, strained, or unnatural doubt, nor one raised by some forced or unnatural meaning given to the evidence, or one which is manufactured from sympathy for a defendant, or to excuse the acquittal of one of whose guilt there is no reasonable doubt, but it means a doubt which, without being sought after, fairly and naturally arises in the mind, after a fair and candid consideration of all the evidence in the case, both for the state and for the defendant.

If, after such consideration, the minds and consciences of the jurors are not firmly and abidingly satisfied of the defendant's guilt, the doubt is a reasonable one, and you should acquit.

The state, however, is not required to prove the defendant's guilt beyond all doubt; that is, absolute certainty is not required. Moral certainty is all the law demands; such certainty as you would act upon in the graver and more important affairs of life.

The criticism is of the last sentences "in that it lacks the very important limitation expressed by the words 'in like cases,' which appear in several instructions formerly sanctioned by this court." See *State v. Ostrander*, 18 Iowa, 435, 458; *State v. Nash*, 7 Iowa, 347, 385. With such a limitation, the illustration is of little or no aid to jurors, for ordinarily men called for such service happily are without experience or familiarity with tragedies of this character, and comparisons of this kind do not help their comprehension. In the first of the cases above, Dillon, J., observed that: "We never thought the description or illustration of it (reasonable doubt), which is immediately under consideration, particularly happy or of essential value as a guide to a jury. But it is not erroneous." Doubtless it is because of the doubtful utility of the illustration containing the limitation "in like

5. SAME: reasonable doubt: instruction.

cases'' that it has been omitted in the later cases, and instructions as so modified approved.

Thus in *State v. Schaffer*, 74 Iowa, 704, an instruction was approved in language following: ''A reasonable doubt is one which fairly and naturally arises in the mind after considering all of the evidence and carefully examining the whole case. If you are then not so satisfied and convinced of defendant's guilt that you would act upon that conviction in matters of the highest importance to yourselves, you should give the defendant the benefit of your doubt, and acquit; if you are so satisfied, you should convict him.''

In *State v. Phillips*, 118 Iowa, 660, 675, the instruction said the doubt must be such an one ''as would cause a prudent and considerate man to hesitate and pause before acting in the graver and more important affairs of life,'' and was approved, following *State v. Pierce*, 65 Iowa, 85, and *State v. Elsham*, 70 Iowa, 531.

In *Minich v. People*, 8 Colo. 440 (9 Pac. 4), the court remarked that there is a vast difference between hesitating or pausing and acting, for that a prudent man often acts in connection with the most important affairs upon a mere preponderance of proofs or considerations, while he may hesitate or have misgivings as to the propriety of the step taken, and this view has been entertained by other courts condemning an instruction in the language quoted from *State v. Schaffer, supra,* while approving that upheld in *State v. Phillips, supra.* See *Commonwealth v. Miller,* 139 Pa. 77 (21 Atl. 138, 23 Am. St. Rep. 170); *Lovett v. State,* 30 Fla. 142 (11 South. 550, 17 L. R. A. 705); *State v. Oscar,* 52 N. C. (7 Jones) 305; *Jane v. Commonwealth,* 2 Metc. (Ky.) 30; *People v. Bemmerly,* 87 Cal. 117 (25 Pac. 266). An examination of these decisions, however, will disclose that the instructions condemned contained little, if anything, else than the language under consideration; nothing obviating the criticism of the Colorado court. On the other hand, where the illustration is employed in connection with other language indi-

cating what is intended, namely, that the jurors must be firmly and abidingly convinced of the guilt of the accused, the weight of authority lends its approval. *State v. Kearley,* 26 Kan. 77; *United States v. Heath,* 19 Wash. Law Rep. 818; *People v. Hughes,* 137 N. Y. 29 (32 N. E. 1105); *People v. Dewey,* 2 Idaho (Hasb.) 83 (6 Pac. 103); *Lawhead v. State,* 46 Neb. 607 (65 N. W. 779); *Frank v. State,* 94 Wis. 211 (68 N. W. 657); *Hopt v. Utah,* 120 U. S. 430 (7 Sup. Ct. 614, 30 L. Ed. 709).

In the last case the trial court instructed, after some preliminary statements, ''that a reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence, and if, after an impartial comparison and consideration of all the evidence, you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.'' With reference to the last clause, Mr. Justice Field said: ''The rule may be and often is rendered obscure by attempts at definition, which serve to create doubts instead of removing them. But an illustration like the one given in this case, by reference to the conviction upon which the jurors would act in the weighty and important concerns of life, would be likely to aid them to a right conclusion, when an attempted definition might fail. If the evidence produced be of such a convincing character that they would unhesitatingly be governed by it in such weighty and important matters, they may be said to have no reasonable doubt respecting the guilt or innocence of the accused, notwithstanding the uncertainty that attends all human evidence. The instruction in the case before us is as just a guide to practical men as can well be given; and, if it were open to criticism, it could not have misled the jury, when considered in connection with

the further charge, that, if they could reconcile the evidence with any reasonable hypothesis consistent with the defendant's innocence, they should do so, and in that case find him not guilty. The evidence must satisfy the judgment of the jurors as to the guilt of the defendant, so as to exclude any other reasonable conclusion. The instruction is not materially different from that given by Lord Tenterton, as repeated and adopted by Chief Baron Pollock in *Rex v. Muller.* 'I have heard,' said the Chief Baron, addressing the jury, 'the late Lord Tenterton frequently lay down a rule which I will pronounce to you in his own language: ''It is not necessary that you should have a certainty which does not belong to any human transaction whatever. It is only necessary that you should have that certainty with which you should transact your own most important concerns in life.'' No doubt the question before you to-day, involving, as it does, the life of the prisoner at bar, must be deemed to be of the highest importance; but you are only required to have that degree of certainty with which you decide upon and conclude your own most important transactions in life. To require more would be really to prevent the repression of crime, which it is the object of criminal courts to effect.' ''

As observed in *State v. Pierce,* 65 Iowa, 85, if the last clause of the instruction under consideration ''could be considered as entirely distinct from the balance of the instruction, we might not be disposed to approve it. But the instruction should be considered as a whole. It is not fair or just to select a single sentence or phrase from an instruction and say the sentence or phrase thus selected is incorrect. We should look rather at the whole of the instruction and consider whether it, as a whole, enunciates the correct rule, and, looking at the instruction in question as a whole, we think it is not objectionable.''

From such consideration it is manifest that the jury might not have been misled by the instruction in the case at bar, for they are told: (1) That the doubt must arise fairly

and naturally from the consideration of all the evidence in the case; (2) that, if after such consideration the minds and consciences of the jurors are not firmly and abidingly satisfied of the defendant's guilt, they have a reasonable doubt and must acquit; (3) there must be moral certainty which is equivalent to certainty beyond reasonable doubt (*Jones v. State,* 100 Ala. 88 [14 South. 772] ; *Commonwealth v. Costley,* 118 Mass. 1) ; and (4) such certainty as would be acted upon in the graver and more important affairs of life. If, standing alone, this last clause might be construed by a jury to permit of a degree of proof less than that exacted, this was obviated by its use in connection with other portions of the paragraph and the inference that other than practically conclusive proof was required negatived. See *State v. Lindsay,* 161 Iowa, —, decided at present session. There was no prejudicial error.

VI. The court submitted to the jury whether defendant was guilty of murder in the first or second degree or not guilty. Appellant insists that this was error in that the evidence was not such as to justify a finding that the crime was murder in the first degree. The circumstances attending the killing of Miss Hermsmeier are not disclosed. The bullet entered one side of her head and passed through to the other, and was found immediately beneath a fracture in the skull. The wound was sufficient to have caused death, and having been inflicted by a deadly weapon, in the absence of any evidence tending to show the manner or circumstances of firing the ball, the presumption is that the killing was murder. *State v. Brown,* 152 Iowa, 427. But from the mere killing with a deadly weapon, even under such circumstances, it is not to be inferred that this was done with deliberation and premeditation. *State v. Phillips,* 118 Iowa, 661; *State v. McCormick,* 27 Iowa, 403.

6. SAME; murder : use of deadly weapon: presumptions.

The jury might have found from defendant's confession, however, that, if he was concerned in taking the woman's

life, he had acted with the design of appropriating her property, and therefore with deliberation and premeditation, and, if they so concluded, his offense was murder in the first degree. There was no error in submitting whether he was guilty thereof.

VII. Complaint is made of the twentieth instruction in which the jury was told, in substance, that if defendant conspired with another to kill deceased and to take her property, and that in pursuance thereof she was killed by one of them in such circumstances as to constitute murder, and defendant aided, abetted, encouraged, advised, or assisted such other person or persons in such killing, the defendant would be guilty the same as if he had done the killing himself. The converse of this also was stated. The instruction evidently was based on the written confession, and the criticism is that it permitted the jury to convict on a finding of a conspiracy with any one, even other than Gist. An erroneous inference was obviated by another instruction telling the jury not to "refer to, discuss, or consider anything in connection with the case, except the evidence received upon the trial and these instructions." Moreover, several persons were concerned in obtaining and disposing of the cattle, one having assisted in driving them away. Persons meeting them on the highway with the cattle rode to the house and, calling out for Miss Hermsmeier, heard no response. That defendant may have been associated with another in taking the life of the deceased is a conclusion in harmony with record, and there was no error in the language of the instruction.

7. SAME: conspiracy: instruction.

The judgment is *Affirmed*.

PRESTON, J., took no part.