THE STATE OF IOWA *v.* JOHNSON.

An instruction on the trial of an indictment for murder, which omits the element of premeditation, in defining the crime of murder of the first degree, is erroneous.

*Fouts* v. *The State*, 4 G. Greene, 500, commented on and overruled.

Where on the trial of an indictment for murder, the court charged the jury as follows:   "If you are satisfied from the circumstances detailed by the testimony, that the murder was willful, deliberate, and committed with malice aforethought, the verdict should be for murder in the first degree;" and where the bill of exceptions recited that the other instructions pointed out the difference between murder of the first and second degree, and manslaughter, but the bill did not show what those instructions were; *Held*, That it did not appear from the record, that the defendant was not prejudiced, by the omission of the word "premeditated," in the said instruction.

Where on the trial of an indictment for murder, the counsel for the prisoner claimed and insisted that the defendant was not guilty, or if so, that the offense was murder of the first degree, and thereupon the court without objection, charged the jury as follows:   "The form of your verdict will be as follows, if you find the defendant guilty : we, the jury, find the defendant guilty of murder in the first degree; or if you find the defendant not guilty, you will say, we find the defendant not guilty ; *Held*, 1.   That the defendant could not complain of the issue his counsel had presented.   2.   That the instruction was not erroneous under the circumstances.

Where on the trial of an indictment for murder, the court, in relation to the dying declarations of the deceased, instructed the jury as follows: "If you receive them as true, it will be your duty to find the defendant guilty of murder in the first degree, because they show that it was done,

either in the perpetration of, or attempt to perpetrate a, robbery;" and where the court, in response to an interrogatory of the jury, further held: "That if you should believe that the deceased was mistaken as to the object the defendant had in killing, (*i. e.*, for his money), and that all the other declarations were true, and are satisfied, from the circumstances detailed by the testimony, that the murder was wilful, deliberate, and committed with malice aforethought, the verdict should be for murder in the first degree. You can find a verdict of guilty of murder in the second degree, if the murder was wilful, and with malice aforethought, though not deliberate and premeditated, provided you are not satisfied that it was committed in the perpetration, or attempt to perpetrate a robbery. In inquiring into what was said by the deceased, on the subject of defendant's object in inflicting the wound, you may inquire whether he meant to say, that a robbery had been committed, or whether he referred to the intention of defendant in making the assault;" *Held*, That taking the instructions together, the first was not objectionable, or at least, not so much so as to alone justify a reversal of the cause.

*Appeal from the Dubuque District Court.*

SATURDAY, JUNE 11.

THE defendant was indicted, tried and convicted of the offense of murder in the first degree, in killing Adam Ostland. To reverse this convcition, he appeals, and assigns for error the giving of the following instructions:

*First.* "If you receive them, (the dying declarations), as true, it will be your duty to find the defendant guilty of murder in the first degree, because they show that it was done either in the perpetration or attempt to perpetrate a robbery."

*Second.* "The form of your verdict will be as follows, if you find the defendant guilty: We, the jury, find the defendant guilty of murder in the first degree; or if you find the defendant not guilty, you will say, we find the defendant not guilty."

*Third.* "If you are satisfied from the circumstances detailed by the testimony, that the murder was willful, deliberate, and committed with malice aforethought, the verdict should be for murder in the first degree." The other material facts appear in the opinion of the court.

*O'Neill & McLenan,* for the appellant.

*S. A. Rice,* (Att'y General), and *W. T. Barker,* for the state.

WRIGHT, C. J.—We gather from the record, that the testimony was made up of the defendant's confessions, the dying declarations of Ostland, and what was seen by the witnesses. The bill of exceptions recites also, that all of the instructions are not before us, and that in the portion omitted, "was contained the distinction between murder in the first, and murder in the second degree, and manslaughter; that on the trial it was contended and urged to the court and jury, by the counsel on both sides, that the verdict must, from the testimony and the law, be either murder in the first degree, or not guilty.

It is further shown, that the jury propounded this inquiry to the court: "If we should be of the opinion, that the deceased was mistaken in his dying declarations, as to the object defendant had in killing, (i. e., for his money), and that all other parts of it are true, could we bring in a verdict of guilty of murder in the second degree, or otherwise?" To this, the court said: "If you should believe that the deceased was mistaken upon the points stated in your question, and that all other parts of decedent's testimony are true, and are satisfied, from the circumstances detailed by the testimony, that the murder was willful, deliberate, and committed with malice aforthought, the verdict should be for murder in the first degree. You can find a verdict of guilty of murder in the second degree, if the murder was willful, and with malice aforethought, though not deliberate and premeditated, provided you are not satisfied that it was committed in the perpetration, or attempt to perpetrate a robbery. In inquiring into what was said by the deceased on the subject of defendant's object in inflicting the wound, you may inquire whether he meant to say that a robbery

had been committed, or whether he referred to the intention of the defendant in making the assault." In addition to the instruction objected to by the prisoner, on the subject of dy_ ing declarations, the jury were also told, that they would examine the circumstances under which they were made, and give them such weight as in their opinion they were en-titled to, and that if they ought to be rejected, it was their province to do so.

The third instruction is erroneous, in that it omits the element of premeditation, in defining the crime of murder of the first degree. The language of the law is, that all murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, mayhem or burglary, is murder of the first degree, and shall be punished with death. Whoever commits murder otherwise than is set forth above, is guilty of murder of the second degree. The general definition of murder is, the killing of a human being, with malice aforethought, express or implied. Code, secs. 2568–9, 2570.

It will be seen that to constitute murder of the first degree, unless it is perpetrated by means of poison or lying in wait, or the perpetration, or attempt to perpetrate, some one of the crimes named, there must be willfulness, deliberation, and premeditation, on the part of the guilty agent. By this is meant, not that willfulness, deliberation and premeditation, might not, and would not, exist in the case of murder perpetrated by means of poison and lying in wait; or that they may not exist when committed in the perpetration or attempt to perpetrate the crimes named, but that in all the instances, except those enumerated by the statute, it must be willful, deliberate and premeditated. In murder of both degrees there must be malice aforethought, either express or implied; but to constitute murder of the second degree, it is not necessary that it should be wilful, deliberate and premeditated. Premeditation implies more than deliberation.

The State of Iowa v. Johnson.

· To meditate, is to deliberate, but to premeditate, implies an act or state of the mind going before meditation or deliberation. It means to meditate or deliberate before concluding to do the deed; not alone to willfully take life, nor yet to do it deliberately, but to predetermine to contrive by previous meditation.

The statutes of Pennslyvania, New Hampshire, Michigan, New Jersey, Tennessee, Alabama and Virginia, use the same, or almost the same, language as ours, in defining murder in the first degree, so far as relates to the general definition. The enumerated or particular instances in which the party would be guilty in this degree, in those states, differ from ours, and from each other. By these statutes, murder, as limited by the common law, has been divided into two classes. The boundaries between murder and manslaughter remain unchanged. It has been held that these statutes, in requring murder in the first degree to be deliberate, did not change the common law in that respect. The distinctive peculiarity to constitute murder of the first degree is, that it shall be accompanied with a premeditated determination to take life. The killing must be premeditated. Of course, we refer to cases coming under the general language, rather than the enumerated instances of the statute. Wharton's Cr. Law, 494; *Dale* v. *The State*, 10 Yerger, 551; *Respublica* v. *Mulatto Bob*, 4 Dallas, 146; *Commonwealth* v. *Jones*, 1 Leigh, 612; *Com.* v. *Green*, 1 Ashmead, 289; *State* v. *Spencer*, 1 Zabriskie, 196; *Stone* v. *The State*, 4 Humphrey, 36; *Kirkpatrick* v. *Com.*, 31 Penn. St., 108; *Fouts* v. *The State*, 4 G. Greene, 500.

The ruling in this last case, requiring that the indictment should designate the grade of the homicide, and that to convict of murder in the first degree, the killing should be charged to be willful, deliberate and premeditated, is opposed to the doctrine of the text in Wharton's Cr. Law, 509 and 483. And upon this subject, see the following cases: *Mitchell* v. *The State*, 5 Yerger, 340; *Commonwealth* v. *Flanagan*, 8 W. & Serg., 415; *Commonwealth* v.

Vol. VIII.—67

*White*, 6 Binney, 183; *Commonwealth* v. *Miller*, 1 Va. Cases, 310; *Harris* v. *The State*, 8 Humph., 597; *McGee* v. *The State*, 8 Miss., 495; *State* v. *Drinkley*, 3 Iredell, 117.

So, also, the tendency of the authorities, contrary to the holding in the same case, is that no specific length of time is required for the deliberation or premeditation. In one case, it is said that if the party killing had time to think, and did intend to kill, for a minute, as well as an hour or a day, it is a deliberate, willful and premeditated killing—constituting murder in the first degree. *Commonwealth* v. *Smith*, 7 Smiths Laws, 647; and see *Davis* v. *The State*, 2 Humph., 439.

In another it is held, that to constitute the crime of murder in the first degree, when the purpose to maliciously kill, with deliberation and premeditation, is formed, the length of time between the design so formed, and its execution, is immaterial. *Shoemaker* v. *The State*, 12 Stanton, 43.

In the case of *The State* v. *Spencer*, 1 Zabriskie, 196, it is said that the premeditation or intent to kill, need not be for a day, or an hour, nor even for a minute. For if the the jury believe there was a design and determination to kill, distinctly formed in the mind, at any moment before, or at the time the pistol was fired, or the blow was struck, it was a willful, deliberate, and premeditated killing, and therefore murder in the first degree.

And these cases, in our opinion, state the law correctly. Premeditation can have no defined limits, as to the time of its commencement before the killing. Every case must rest on its own circumstances, for it is impossible to furnish any safe and uniform standard in this particular. "Law, reason and common sense," says a learned judge in one case, "unite in declaring, that an apparently instantaneous act may be accompanied with such circumstances, as to leave no doubt of its being the result of premeditation." *Commonwealth* v. *Daley*, 4 Penn., L. J., 156.

It is suggested, however, that any possible error arising

The State of Iowa v. Johnson.

from the omission of the word "premeditated," in giving the third instruction, is obviated, from the fact that the court did in other instructions, not before us, point out "the distinction between murder of the first and second degree, and manslaughter." It is true, that the bill of exceptions recites, that this was done, but what the distinction was, as thus pointed out, we cannot know. For ought that appears, murder of the first degree, was defined as in this instruction. It may be, as claimed, that the element of premeditation was distinctly and clearly referred to in this part of the charge; and if it so appeared from the record, we might be fully justified in holding, taking all the instructions together, that there was no prejudice to the prisoner's cause from its omission in the third instruction. In the absence of such instructions, however, we cannot say that they contained sufficient to correct the manifest error in the one before us.

Instructions must always be considered with reference to the circumstances of the case in which they are given. The intention of the law is, that they should be adapted to the issue, and sufficient for the guidance of the jury, in the particular case on trial. Thus, in the case before us, the second instruction, under some circumstances, would be erroneous, while in this particular case it is without objection.

The counsel for the prisoner had claimed, and insisted, that he was not guilty, or, if so, the offense was murder of the first degree. Notwithstanding he thus claimed, he had the right, by proper instructions, to have the jury inquire whether it was not of the second degree, or manslaughter. If he made no such request, however, but permitted the instructions to be given, adapted to the issue as he made it, the prisoner cannot now complain. When it is said, as claimed in the argument, that a prisoner is not bound by any course of argument, or figure of speech, used by his counsel, the remark must be understood with some qualifications.

Neither he, nor his counsel, would be bound at all events, and for all purposes. But he is, as a general rule, bound in this court, by the line of policy adopted and pursued by his counsel in the court below. Thus, if his counsel did not introduce all his testimony; did not ask all the instructions he should have done for the benefit of his cause before the jury; did not present all the arguments, fairly and justly deducible from the testimony; did not object to the intro-duction of improper testimony, or except to improper instructions; in all these, and many other instances, the prisoner is concluded by the action, or want of action, of his counsel. So, if throughout the case, from the belief that the interest of his client required it, he steadily and persistently insists, that the crime is of the highest grade, or that his client is innocent—if, without objection, he permits all of the instructions to be given, and adapted to the positions assumed by him—the prisoner cannot, in this court, claim that the instructions do not contain all the law, or that they are not as full and explicit as they should have been, under other circumstances. In such a case, it is perfectly competent for the court to charge the jury, so as to cover other points than those made by counsel, and to give the prisoner the benefit of other legal rules and principles than those urged. It is not only competent to thus charge, but in many instances, as in this, it is felt to be a duty. And yet, if omitted, we are aware of no precedent for holding it erroneous.

It is further to be remarked, in relation to the second instruction, that the jury were told, in answer to the interrogatory propounded, that they could find a verdict for murder in the second degree. And thus, it appears, that all reasonable chance for prejudice was removed, unless the court should also have told them that they could find the prisoner guilty of manslaughter. In addition to what is said above, as to the duty of the court in this respect, we may remark, that unlesss requested, the prisoner, in this case, cannot complain of the failure to thus instruct. He cannot,

for the sufficient reason, that there is no particle of testimony tending to show that the offense was of this grade. The prisoner was most clearly guilty of murder of the first or second degree, or of nothing.

Taking the first instruction, in connection with what was afterwards said, upon the subject of dying declarations, and we think it was not objectionable, or, at least, not so much so as to alone justify a reversal of the cause.

Judgment reversed.