Odette vs. The State.

*By the Court.*— The judgment of the circuit court is affirmed.

ODETTE, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 6 — April 23, 1895.*

*Criminal law and practice: Murder: Evidence: Instructions: Self-defense: Manslaughter: Urging jury to agree.*

1. On a trial for murder a witness for the state, after testifying that shortly after the homicide the defendant gave him some cartridges,

belonging to the gun with which the killing was done and said that he was going away and did not want the cartridges or the gun, was allowed to testify that he supposed the defendant meant that he was going "over the road." *Held*, that the error, if any, did not affect the substantial rights of the defendant and hence should not work a reversal.

2. The mere fact that the deceased, with whom defendant had been quarreling, took out his knife when defendant approached him with a gun, would not justify an instruction that the jury should acquit the defendant if they found that he fired the shot with the belief that it was necessary in self-defense.

3. Defendant and the deceased had been drinking and had quarreled. Defendant had procured a gun, and the deceased had grasped it with one hand, when it was fired and deceased was shot. The court charged the jury that if a person voluntarily becomes so drunk as to be incapable of intending murder, and while in that condition kills a person, "he is guilty of murder in the second degree, unless there be something in the circumstances to render such killing a homicide of a lesser degree or excusable or justifiable," and that "if the gun was accidentally discharged while they were struggling for its possession, and without any design to kill or purpose to commit harm, such killing would be excusable, and the verdict should be not guilty." *Held*, that the omission to give a specific instruction as to manslaughter was not a ground for reversal, especially in the absence of any request for such an instruction.

4. After the jury had failed to agree, they were told by the court that they ought not stand out obstinately, but should reason together, harmonize their differences if possible, and arrive at some kind of a verdict, and that if they wanted no enlightenment upon the law in the case they might return to their room and continue to deliberate upon the issues until they had arrived at a verdict. *Held*, that this was not improper as being a threat that the jury would not be discharged until they had agreed, nor as expressing an opinion as to the facts.

ERROR to review a judgment of the circuit court for Marathon county: CHARLES V. BARDEEN, Circuit Judge. *Affirmed.*

The information in this case charges the plaintiff in error with having, November 3, 1893, at Easton, in Marathon county, killed Louis Odette, with a premeditated design to effect his death. To that charge the accused pleaded not

guilty.    At the close of the trial the jury returned a verdict
finding the accused guilty of murder in the second degree.
Thereupon the court adjudged that the said *William Odette*
be punished by imprisonment at hard labor in the state
prison at Waupun for the period of twenty years, said term
to commence at 12 o'clock noon, December 5, 1893, and that
the fifth day of such imprisonment be solitary confinement.
To review that judgment this writ of error is sued out.

The cause was submitted for the plaintiff in error on the
brief of *John Livermore*, attorney, and *Bump, Kreutzer &
Rosenberry*, of counsel, and for the defendant in error on
that of *L. K. Luse*, Assistant Attorney General.

For the plaintiff in error it was contended, *inter alia*, that
although when the jury returned into court without having
agreed upon a verdict the court might, under sec. 2855,
R. S., send them out for further deliberation, there was no
authority for sending them out with the instruction that
they must deliberate until they agreed.    See *Slater v. Mead*,
53 How. Pr. 57; *Wiggins v. Downer*, 67 id. 65; *Green v.
Telfair*, 11 id. 260; *Moore v. Platteville*, 78 Wis. 651; 2
Thomp. Trials, §§ 2363–2366; 1 Bishop, New Crim. Proc.
§ 982 and cases cited in note 7.    The evidence would have
sustained a verdict for manslaughter instead of murder, and
the court should have so instructed the jury and defined
manslaughter.    11 Am. & Eng. Ency. of Law, 251; 1 Bishop,
Crim. Proc. (3d ed.), § 980; *Boyd v. State*, 28 Tex. App. 137;
*Rutherford v. State*, 16 id. 649; *Carleton v. State*, 61 N. W.
Rep. 708.    The charge, which defined murder in the first
and second degrees and then stopped without defining man-
slaughter or any other degree of crime of which defendant
might be convicted, was misleading and prejudicial, and was
therefore error although no specific instruction was requested.

CASSODAY, J.    The plaintiff in error and his two brothers,
Albert and Henry, were unmarried, and lived with their

mother at the house where the homicide occurred. Two other brothers, Louis and Joseph, were each married, and lived by themselves, Louis's house not being far distant from his mother's. On the night previous to the homicide, the accused was at his brother Louis's house. There were others there, including Albert, Louis and his wife and two other women, apparently engaged in drinking and carousing to a late hour. The next morning most of the crowd, including the accused and his brothers Louis and Albert and two of the women, were at the house of the mother. They had a jug of liquor among them, and it was apparently free for all. There is evidence tending to prove that, after some hours of drinking and quarreling, the controversies between the accused and his brothers Louis and Albert became serious; that some striking and clinching had been indulged; that the accused threatened Louis, and started to go into the front door of the house; that Albert, conceiving that he was going into the house for a bad purpose, grabbed hold of him and threw him down, and held him there for some minutes; that finally Albert asked the accused what he was going to do, and he said, "Nothing;" that Albert then let him up, and he went into the front door of the house; that Albert then walked around to the back side of the house, and the accused soon came out with his gun; that Albert then asked him what he was going to do with the gun; that the accused answered that he only wanted to scare Louis; that Albert then told him that the gun was not the proper thing to fool with, and thereupon grabbed hold of it; that at that time Louis stood off about eighteen feet from the accused with a knife in his right hand; that Louis then came up and grabbed hold of the gun with his left hand; that about that time Albert stepped away, and the gun was fired, and Louis was shot through the heart from the front part of his body.

1. Error is assigned because the witness Holbrook, after testifying in behalf of the state to the effect that, a few

hours after the homicide and while the accused was still at the house of his mother, the accused said that he did not kill Louis, and then, after being cross-examined, he again testified in behalf of the state to the effect that about the same time he and the accused walked out into the field, and while there the accused gave him seven cartridges belonging to his gun, and said that he was going away and did not want the cartridges or the gun. When asked what the accused meant by such statement, he was allowed to answer: "I didn't know what he meant. I supposed he meant to go over the road." He then gave the conversation in detail. It was claimed on the trial that the accused was, at the time of making the statement, still under the influence of liquor, and that he had endeavored to escape and had been brought back by force. The action and appearance of the accused at the time may have given color and meaning to the language employed. If so, it was proper. But, even it was technically an error to admit such statement, still it does not appear to be such an error as affected the substantial rights of the accused, and hence should not work a reversal, but must, under the statute, be disregarded. Sec. 2829, R. S.; [1] *Olson v. Solveson,* 71 Wis. 663.

2. The court properly refused to instruct the jury to the effect that they should acquit the accused if they found from the evidence that he fired the shot under the belief that it was necessary in self-defense. The mere fact that Louis took out his knife when the accused came out of the house with his gun and approached him, did not justify such an instruction. It furnished no reasonable ground for apprehending a design on the part of Louis to do him great personal

---

[1] Sec. 2829, R. S., provides: "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."— REP.

injury, and reasonable cause for believing that he was in imminent danger of such design being accomplished. R. S. sec. 4366, subd. 2.

3. Certainly no reversible error was committed by the failure of the court to define manslaughter and to instruct the jury as to the law applicable to that offense. The court charged the jury to the effect that. if a person voluntarily becomes so drunk as to be incapable of intending murder, and then, while in that condition, kills a person, "he is guilty of murder in the second degree, *unless there be something in the circumstances to render such killing a homicide of a lesser degree or excusable or justifiable;*" and, again, to the effect that "if the gun was accidentally discharged while they were struggling for its possession,.and without any design to kill or purpose to commit harm, such killing would be excusable, and the verdict should be not guilty." Under the facts and circumstances in this case, these instructions were quite favorable to the accused. *Dickerson v. State,* 48 Wis. 288; *Manning v. State,* 79 Wis. 178; *Winn v. State,* 82 Wis. 571; *Zoldoske v. State,* 82 Wis. 580. Even if the evidence justified a specific instruction upon the subject of manslaughter, yet, as there was no request to give such instruction, the omission to give the same was not reversible error. *Ibid.*

4. After the jury had been out for some time and failed to agree, they were brought into court and informed by the court, in effect, that they ought not to stand out in an unruly and obstinate way, but should reason together and talk over the existing differences, if any, and harmonize the same, if possible; that it was their duty to meet the testimony in a spirit of fairness and candor with each other, and not to stand back obstinately, but to reason together and apply the law as given by the court to the facts in the case, and arrive at some kind of a verdict; that, if they wanted no enlightenment upon the law in the case, then they might return to their room and continue to deliberate upon the

issues until they had arrived at a verdict. We do not think this can be fairly construed as a threat that the jury would not be discharged until they had agreed. It was merely expressing the usual expectation that they would agree. It was for that purpose that the jury returned to their room. The mere failure of the court to discharge the jury when they thus came in, or telling them that it was their duty to use every reasonable effort to come to an agreement, as indicated, was not error. *Giese v. Schultz*, 69 Wis. 521. Nor can the form of expression given in the charge be reasonably construed as expressing a wrong opinion as to the law or the facts, or to express an opinion of a fact which should have been left wholly to the jury, and hence the portions of the charge referred to contain no reversible error. *Briffitt v. State*, 58 Wis. 39. The conduct of the court was not in violation of sec. 2855, R. S. The court must necessarily have a broad discretion in such matters.

*By the Court.*— The judgment of the circuit court is affirmed.