STATE, Respondent, vs. SCHERR, Appellant.

*March 12—April 13, 1943.*

66

68

For the appellant there were briefs by *O'Meara & O'Meara* of West Bend, and by *J. E. O'Brien* of Fond du Lac, and oral argument by *Mr. O'Brien.*

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Milton L. Meister,* district attorney of Washington county, and oral argument by *Mr. Platz* and *Mr. Meister.*

BARLOW, J.  Defendant claims that the trial court erred in refusing his request that manslaughter in the second degree, sec. 340.15, Stats., and manslaughter in the fourth degree, sec. 340.26, be submitted to the jury.  We have examined the record in vain in an effort to find where this request was made.  Reference is made to it in the motions after verdict. Defendant, having failed to make this request during the trial, cannot be heard at this time to claim error on the trial court's omission to submit lesser degrees of manslaughter. *Van Rite v. State,* 237 Wis. 212, 295 N. W. 688; *Sweda v. State,* 206 Wis. 617, 240 N. W. 369.

Defendant was found guilty of manslaughter in the first degree under the provisions of sec. 340.10, Stats., which reads:

*"Manslaughter, first degree.*  The killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of any other, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to a felony, or in an attempt to perpetrate any such crime or misdemeanor, in cases where such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

We will proceed to examine the evidence under the foregoing statute.  It is undisputed that there was no design to effect death and no attack had been made on the instructions

of the court on the question of culpable negligence. The information filed against the defendant by the state is for manslaughter. In order to sustain the conviction of manslaughter in the first degree, the evidence must show beyond a reasonable doubt that such killing would be murder at the common law. At the common law, murder is the killing of a human being with malice aforethought, express or implied. *Commonwealth v. Webster,* 5 Cush. (59 Mass.) 295, 52 Am. Dec. 711; *People v. Haun,* 44 Cal. 96; *State v. Johnson,* 8 Iowa, 525, 74 Am. Dec. 321.

In *Commonwealth v. Webster, supra,* the court said (p. 304):

"Malice, in this definition, is used in a technical sense, including not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. It is not confined to ill will toward one or more individual persons, but is intended to denote an action flowing from any wicked and corrupt motive, a thing done *malo animo,* where the fact has been attended with such circumstances, as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief."

The evidence in this case establishes the fact that the deceased had been drinking considerable beer and had at least reached a talkative and abusive stage. It is common knowledge that some people become obnoxious, and even a nuisance, when they have consumed a sufficient amount of alcohol. In the presence of several people in the tavern, the deceased accused the defendant, among other things, of being a deadbeat and failing to pay his obligations. This was done in a loud and offensive tone of voice. Defendant followed the course of the average citizen in leaving the tavern, and even offered to take deceased home when requested to do so by the tavern keeper. At the Rauh barn, a short time afterwards, deceased continued his abusive tactics. The testimony of the witness Rauh, the owner of the farm, is to the effect that there was loud talking in which both the deceased and defendant in-

dulged, and that the deceased used vile language toward the defendant and requested him to leave the premises. The testimony of the same witness is to the effect that both parties were motioning around with their hands. Rauh and defendant both testified that in the first tussle in the barn defendant knocked deceased's hat off and immediately picked it up and offered it to the deceased, and the deceased in anger refused to take it. Defendant testified that while they were in the barn the deceased at one time struck him and at another time kicked him, and that in the second altercation in the barn he pushed the deceased. The end of this quarrel came when the witnesses heard a crack and found the body on the cement floor of the barn.

In *Rowan v. State,* 30 Wis. 129, 139, the court said:

"We think, therefore, that it is very clear that the homicide committed under these circumstances, was not necessarily murder at the common law, for the crime of murder requires that the act of the party committing the homicide be done with some degree of deliberation and intelligence, or with the intent to do some great bodily harm."

The court in that case held that if the defendant committed an unlawful assault and battery, and while engaged in the perpetration of that crime, by the same act he killed the person without design to effect death, it was manslaughter in the first degree if the crime possessed the other essential elements of that offense. The court did not say that mere assault and battery with death following constitutes manslaughter in the first degree; it is necessary that the other essential elements of the offense must exist.

In *Boyle v. State,* 57 Wis. 472, 483, 15 N. W. 827, the court approved the following language:

"To constitute murder at the common law, when it results from a personal assault upon the deceased, not made with an intent to kill, the assault must be of such a character as to necessarily endanger the life of the person assaulted. The

assault must be made with such a weapon or instrument as might endanger the life of the party assailed, or, if not made ·with a dangerous weapon, it must be made in such a manner as to threaten great bodily harm, at least, to the party assaulted."

And in *Maxon v. State,* 177 Wis. 379, 383, 187 N. W. 753, this court stated, with reference to murder at 'the common law:

"The generally accepted doctrine is and was that an unintentional killing of a human being through the reckless and wanton doing of an act, which from its nature was capable of doing great bodily harm to a human being, might be deemed sufficient to sustain a finding of the implied malice as made such killing a common-law murder within the meaning of the phrase as used in our statute."

From these decisions, we must draw the conclusion that the malice aforethought required must show some degree of deliberation or purpose or design as distinguished from the unfortunate result.

The state contends that the testimony of the defendant that he was "mad" at deceased at the time he pushed him, which resulted in his death, together with the nature of the injury and the medical testimony describing the manner in which it may have been caused, is sufficient to sustain the jury in finding malice. We cannot agree with the position of the state. The evidence fails to show that there was some degree of deliberation or the intent to do great bodily harm required to establish murder at the common law.

In view of the fact that this case is to be retried it is well to state that the evidence before the court at this time fails to ·show facts sufficient to sustain either manslaughter in the second degree or manslaughter in the third degree. The evidence, however, justifies a jury passing on the question of the guilt of the defendant of manslaughter in the fourth degree upon proper instructions from the court.

*By the Court.*—Judgment reversed, and a new trial ordered.