SMITH, Plaintiff in error, vs. THE STATE, Defendant
in error.*

*January 11—February 15, 1946.*

\* Motion for rehearing denied, without costs, on April 12, 1946.

400

*George B. Skogmo* and *Louis S. Wiener,* both of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, *William J. McCauley,* district attorney of Milwaukee county, and *John S. Barry,* deputy district attorney, and oral argument by *Mr. Barry* and *Mr. Platz.*

WICKHEM, J.    Defendant contends that judgment of conviction should be reversed, because—

(1) The evidence failed to prove beyond a reasonable doubt that the fatal bullet was discharged by defendant;

(2) A new trial should have been granted in the interest of justice and upon the ground of newly discovered evidence;

(3) Defendant was prejudiced by various errors occurring during the course of the trial.

The facts of the case are as follows: On Sunday, November 22, 1942, one Jeff Thompson was shot to death in the city of Milwaukee.    On November 21, 1942, defendant went to work at 6 a. m. and returned home about 2 p. m.    He left his house in the evening about 8 o'clock and stopped at the barbershop.    Thereafter, defendant went to a dance hall and some taverns and drank very heavily throughout the night.    He went to a club managed by deceased sometime after 6 a. m. and there had a quarrel with deceased over a dice game.    This was a game in which the customer was allowed a certain number of rolls of dice and was to have a prize payable in money if he rolled a certain score.    Defendant claimed that he had satisfied the requirements and was entitled to a prize.    The dice girl denied this, deceased refused to pay the prize, and the quarrel followed.    Defendant, who lived a short distance from the club, went home, got his .38-calibre revolver, and returned to continue the dispute.    The club was a second-floor establishment and deceased eventually walked out and down the stairs with defendant, the quarrel continuing all the

time. Thereafter, defendant took several steps away from deceased, turned and fired five bullets at him. Several of these struck deceased and one pierced his heart, killing him instantly. Deceased was unarmed and made no assault upon defendant. At the time of the shooting, deceased was standing a step or two above the sidewalk and the bullet which entered the heart took a slightly upward course. There were three fresh bullet holes in the building, one bullet entered deceased's right knee and made its exit from the body; one bullet entered the front of the right coat sleeve and exited on the other side; one entered the chest one inch above the lower tip of the breast bone, struck the heart and came to rest in the body; one bullet entered the left panel of the coat and went through the left side of the coat near the left lapel.

Defendant's first contention is that there were four bullet holes in deceased and three in the building; that since defendant discharged only five bullets, it is evident that somebody other than he fired two shots and a matter of speculation as to which was the fatal bullet. The obvious answer to this contention is that three of the bullets which entered deceased did not remain in his body and defendant makes an elaborate analysis of the physical situation in an attempt to demonstrate that none of the bullets that went through the body could have made any of the bullet holes in the building. We have considered this contention carefully in the light of the record and are of the view that defendant's contention is not sound. Bullets fired into a body frequently come into contact with buttons, the contents of pockets, or with the bones of the body, and are diverted in such a way that it is nearly impossible to give significance to the ultimate location of bullet holes outside the body. The testimony of eyewitnesses is to the effect that defendant was the only one who did any shooting or was in a position to do any shooting and we see nothing in the record that raises any doubt whatever that defendant killed deceased. Defendant made no issue upon this point at the trial, and in

his address to the jury counsel for defendant specifically conceded that defendant fired the shot that killed deceased.

Defendant's second contention is that a new trial should have been granted upon the ground of newly discovered evidence. Briefly summarized, the evidence claimed to have been newly discovered constitutes a more precise disclosure of the amount of defendant's drinking during the hours before the shooting and indicates that it was even heavier than indicated at the trial. Defendant claims that this evidence shows a degree of intoxication inconsistent with a premeditated purpose to kill. We are of the view that this contention is not sound and that the newly discovered evidence was cumulative in character. All of the testimony at the trial is to the effect that defendant was drunk, and he testified to very heavy drinking during the evening and early morning prior to the killing. The officer who came to his house shortly after the killing testified that defendant was drunk at this time. The whole case was tried upon the theory that defendant was drunk. The evidence contained in the affidavits for a new trial simply fortifies this conclusion. It does not in any way overcome testimony to the effect that defendant was sober enough to go home, get his gun, put extra cartridges in his pocket, return to the scene of the dispute, renew the quarrel, shoot the deceased upon his refusal to return defendant's money, return to his home, give the gun to his wife to be hidden away, and give a fairly adequate account of his actions to an officer who came to his house shortly after the shooting. The trial judge could in his discretion conclude that the newly discovered evidence would not be given any weight in view of the foregoing facts which are virtually undisputed and that this evidence is simply cumulative support of an otherwise well-established fact, namely, defendant's drunken condition.

Defendant contends that the trial court erred in instructions to the jury. Typical of a group of such exceptions is the following: The court instructed the jury that accused could not

be found guilty if at the time of the shooting incident he was so intoxicated as to be unable to form the requisite intent. It is claimed that this shifted the burden of proof to defendant to establish intoxication to a degree inconsistent with ability to form a specific intent. We are of the view that there is nothing to this contention. The court was instructing the jury upon the substantive law relating to murder in the first degree. In other portions of the instruction there were accurate and perfectly clear directions in respect of the burden of proof.

The court instructed the jury as follows:

"You may, therefore, consider whether or not the defendant was so intoxicated at the time of the alleged commission of the offense as to be incapable of forming the felonious intent to kill which is an essential element of murder in the first degree, and if you have any reasonable doubt as to whether or not he was so intoxicated, you must give the defendant the benefit of that doubt and acquit him of the charge of murder in the first degree."

It is claimed that the word "may" should have been "must" and that the effect of the instruction was to permit the jury to consider the factors involved in the instruction rather than to require them to do so. The instruction required the jury to acquit defendant of murder in the first degree if they entertained any reasonable doubt whether he was so intoxicated as to be incapable of forming a felonious intent to kill, and it is impossible that the jury was misled into thinking that they could consider or ignore the subject of intoxication at their option.

It is next contended that the court should have submitted manslaughter in the second and third degrees as well as excusable homicide. There was no request to submit any degrees of homicide lower than these submitted by the trial court. Under the doctrine of *State v. Scherr*, 243 Wis. 65, 9 N. W. (2d) 117, and *Van Rite v. State*, 237 Wis. 212, 295 N. W. 688, failure to submit the lower degrees cannot be assigned as prejudicial error.

The next contention is that the arguments to the jury on the part of the state were prejudicial. Both defendant and deceased were colored persons and counsel for defendant in addressing the jury made an oratorical reference to Abraham Lincoln's emancipation of the colored race and quoted his famous statement, "With malice toward none, with charity for all. . . ." In the state's closing argument a reply was made to this which in substance was that Abraham Lincoln intended the freed slaves to be good citizens and that the people of the colored race were just as opposed to murder as other citizens. In his argument to the jury defendant's counsel appealed for sympathy by reference to defendant's wife, child, and unborn child. The state in its argument replied that deceased had two children who would never see him again and who could now only put flowers upon his grave. None of these statements were inflammatory in form and they cannot be supposed to have had an improper effect on the jury. They were replies to defendant's appeals for sympathy, and the net results of the verbal exchange were not important. There were no objections to any of the remarks and apparently neither counsel thought them out of place at the time.

Defendant contends that the court should have instructed the jury that if defendant was so intoxicated as to be mentally incapable of making a voluntary confession, or that his intoxication, in combination with lack of sleep, confinement, and continuous questioning by the police made him mentally incapable of making a voluntary confession, such confession should not be considered by the jury.

We are of the view that this contention must fail for several reasons: (1) The statements of defendant to the police officers and to the district attorney were introduced without objection by defendant; (2) no contention was made upon the trial that by reason of his intoxication or lack of sleep defendant was incapable of making a voluntary confession; (3) no such instruction was requested; (4) defendant testified at the trial and his evidence was not materially different from that con-

tained in his pretrial statements and admission of the confessions cannot be considered to have any prejudicial effect.

Numerous other objections are made, for example, that the medical examiner was permitted to state that he found a scapular on deceased and that he called a priest; that the clothes of deceased were admitted in evidence; that the widow of deceased was permitted to testify as to when and where she last saw her husband. None of this evidence had any prejudicial effect under the circumstances and all of it was material in connection with identification of deceased, establishment of the fact of his death or the location of the bullet holes.

We have carefully examined all of the other contentions made by defendant and are satisfied that no prejudicial error is shown.

This opinion would be unduly extended without a corresponding judicial service by a detailed consideration of each error assigned.

*By the Court.*—Judgment affirmed.