NEUENFELDT, Plaintiff in error, v. STATE, Defendant in error.

*November 1—November 30, 1965.*

22

For the plaintiff in error there was a brief and oral argument by *Irving D. Gaines* of Milwaukee.

For the defendant in error the cause was argued by *Gerald P. Boyle,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, *Hugh R. O'Connell,* district attorney, and *Ben J. Wiener,* deputy district attorney.

HALLOWS, J. The first issue raised is whether the accused was denied his constitutional right to have the assistance of counsel prior to giving the confessions to the police. It is argued the police denied the accused the right to counsel by refusing to let him contact his son-in-law and give him the card with an attorney's name, address, and telephone number on it. There is testimony no such incident happened and neither the son-in-law testified nor was the slip of paper put in evidence. Nor was it explained how he would have on his person ready for the occasion a card or slip of paper with an attorney's name, address, and telephone number thereon. There is positive testimony the accused never communicated to the detective in whose custody he was that he wanted to talk to his son-in-law or wanted an attorney. The request for an attorney was not proven. Such a request, however, need not be a formal one, but the desire to seek or have the advice of counsel must be communicated in some manner to him who has custody of the accused before it can be said there was a denial of counsel.

It is argued that even though a request for counsel was not proven, nevertheless the accused was entitled to counsel at the time of interrogation at the safety building under the doctrine of *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977, because he was then a suspect. This court is now asked to re-examine its interpretation of that decision and hold that when the interrogation by the police reaches the point where it becomes accusatorial in nature the accused is entitled to the assistance of counsel, whether requested or not, and statements taken by the police in the absence of counsel are inadmissible in evidence at the trial even though they may be voluntarily given.

In *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169, certiorari denied in 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. (2d) 706, we distinguished *Escobedo* and confined it to its facts. It is true Justice WHITE in his dissenting opinion, page 495, pointed out the decision was "another major step in the direction of the goal which the Court seemingly has in mind—to bar from evidence all admissions obtained from an individual suspected of crime, whether involuntarily made or not." However, we were unwilling to add another step and extend *Escobedo* to the facts of the *Browne Case* where no request had been made for counsel. We further pointed out that in *Holt v. State* (1962), 17 Wis. (2d) 468, 479, 117 N. W. (2d) 626, we stated there was no hard-and-fast rule that an accused must be informed by the police of his constitutional right not to incriminate himself as a condition precedent to admission into evidence of admissions or confessions made to the police and the failure to so advise alone was not sufficient upon which to ground inadmissibility, but might be under *Escobedo* if coupled with other circumstances.

In *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753, we re-examined our position in respect to *Escobedo*, especially as that case was

interpreted by *People v. Dorado* (1965), 42 Cal. Rptr. 169, 398 Pac. (2d) 361. We concluded that *Dorado* pushed the outer limits of *Escobedo* and extended it to a case where no request for counsel was made during the interrogation. We unequivocally rejected the *Dorado* interpretation of *Escobedo*.

Since that decision several other courts have followed *Dorado* and we are asked to reconsider our position. Recently, in *State v. Neely* (1965), 239 Or. 487, 395 Pac. (2d) 557, 398 Pac. (2d) 482, the Oregon court applied *Escobedo* to a situation where the accused was not advised of his right to remain silent prior to the police taking a confession from him. Likewise, in *United States ex rel. Russo v. New Jersey* (3d Cir. 1965), 351 Fed. (2d) 429,[1] that court interpreted *Escobedo* to require counsel for the suspect when the interrogation process shifted from the investigatory to the accusatory stage unless intelligently waived by the suspect and such waiver was not to be presumed from the mere failure to request. In a similar vein, *Escobedo* has been construed by *State v. Mendes* (R. I. 1965), 210 Atl. (2d) 50. These cases represent what is known as the soft approach and go beyond the holding of *Escobedo* and attempt to forecast what the United States supreme court might decide in the future.

On the other hand the majority of the courts which has considered the *Escobedo* problem has confined its application to the facts of that case as did this court and has required a request for counsel to be made by the accused. *United States v. Childress* (7th Cir. 1965), 347 Fed. (2d) 448; *Edwards v. Holman* (5th Cir. 1965), 342

---

[1] In September, 1965, the Pennsylvania supreme court reversed its prior decisions and altered its interpretation of *Escobedo* to conform with *Russo* since for all practical purposes the 3d circuit court of appeals was the ultimate forum in Pennsylvania. See *Commonwealth v. Negri* (1965), 419 Pa. 117, 213 Atl. (2d) 670. However, the New Jersey supreme court refused to alter its interpretation of *Escobedo* and to adopt the *Russo* interpretation. See *State v. Coleman* (1965), 46 N. J. 16, 214 Atl. (2d) 393.

Fed. (2d) 679; *State v. Worley* (1965), 178 Neb. 232, 132 N. W. (2d) 764; *King v. State* (Del. 1965), 212 Atl. (2d) 722; *People v. Hartgraves* (1964), 31 Ill. (2d) 325, 202 N. E. (2d) 33, certiorari denied, 380 U. S. 961, 85 Sup. Ct. 1024, 14 L. Ed. (2d) 152; *Sturgis v. State* (1964), 235 Md. 343, 201 Atl. (2d) 681; *State v. Scanlon* (1964), 84 N. J. Super. 427, 202 Atl. (2d) 448; *People v. Gunner* (1965), 15 N. Y. (2d) 226, 205 N. E. (2d) 852; *United States v. Cone* (2d Cir. 1965), 354 Fed. (2d) 119; *United States v. Robinson* (2d Cir. 1965), 354 Fed. (2d) 109.

We have re-examined the arguments for the extension of *Escobedo,* namely, that it is unfair and not due process under our accusatorial system to admit in evidence a statement from one who might be unknowledgeable of his right to remain silent or to request the aid of counsel; that the new concept of the Fourteenth amendment due-process clause stresses greater reliance on the presence or absence of counsel as a factor in determining the voluntariness of the confession; and that the request for counsel requirement favors those who are knowledgeable and prejudices those who are ignorant and indigent. We are aware of the expansion of the Sixth amendment and its protection from the assistance of counsel for the defense in criminal prosecutions to the aid of counsel in the interrogation process when the focus is shifted to a particular suspect.

We have heard no reasons yet why advice given by law-enforcement officers to an accused of his constitutional right to remain silent and to aid of counsel, and that whatever he may say might be used against him upon the trial does not adequately take the place of the aid of counsel at the accusatorial stage of investigation. Nor have we been given any enlightenment if counsel is absolutely necessary at that stage of the investigation how as a practical matter an indigent is going to be assigned counsel unless counsel is going to be assigned automatically upon every arrest. Until the United States supreme court gives us more guidance,

we are inclined to stay with our own decisions and not create additional problems by extending *Escobedo* beyond its facts.[2]

The accused contends his confession was coerced and thus involuntary and its admission was a violation of his right against self-incrimination guaranteed by the Fifth amendment to the United States constitution. The trial court found the confessions were not only trustworthy but "freely and voluntarily given and without any lack of due process so far as fully apprising him of his constitutional rights not to incriminate himself." Because of this finding by the court there was no constitutional procedural defect as was involved in *Jackson v. Denno* (1964), 378 U. S. 368, 84 Sup. Ct. 1774, 12 L. Ed. (2d) 908; and *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753. In *State v. Hoyt* (1964), 21 Wis. (2d) 284, 124 N. W. (2d) 47, 128 N. W. (2d) 645, we pointed out a confession to be saved from constitutional contamination must be the result of a deliberateness of choice under the decisions of the United States supreme court. This concept that a confession to be admissible in evidence must be the voluntary product of a free and unconstrained will was followed in *Pulaski v. State* (1964), 24 Wis. (2d) 450, 129 N. W. (2d) 204, and *State v. Brown* (1964), 25 Wis. (2d) 413, 130 N. W. (2d) 760. Although the rule of voluntariness is easy to state, the determination of what is a voluntary confession in a given fact situation may be difficult. In evaluating the facts for such purpose, the principle adopted by the United States supreme court is to consider the "totality of the circumstances"—all the facts surrounding the making of the confession. *Fikes v. Alabama* (1957), 352 U. S. 191, 77 Sup. Ct. 281, 1 L. Ed. (2d) 246.

[2] On November 22, 1965, the United States supreme court decided it would take jurisdiction of four cases which involve or may involve the issue presented here, *i. e.,* 419 Misc. *Miranda v. Arizona;* 397 Misc. *Vignera v. New York;* 80 Misc. *Westover v. United States;* 205 Misc. *Johnson v. New Jersey.*

Many of the facts urged in the instant case as constituting psychological factors of coercion were made and considered in *Pulaski v. State, supra.* However, each case must be considered on its particular combination of facts. Here, it is claimed the accused was held incommunicado from the time of his arrest approximately 4:30 p. m. until he confessed about 11:30 p. m.; during which time he was not given any food or drink and was harassed and browbeaten by numerous detectives who continuously shuffled in and out of the interrogation room which was small in size. It is argued he was small in stature, being five feet four inches tall and by contrast the detective primarily in charge of the interrogation was tall and heavy, had only finished two years of Boys' Technical High School, was fifty-three years of age, wore glasses because of blindness in one eye, weighed 130 pounds, and was an unemployed electrician. It is also argued that because by 11:30 that night he was so exhausted and wanted to get some sleep, and because of pressure by the detectives and of a threat of physical harm he finally confessed but did not write out the confession.

On the contrary, it is quite without dispute that prior to his first confession he had been advised of his rights to remain silent and that what he said could be used against him in court. The first occasion was when he was in the squad car en route to the safety building and the other about one and a half hours later before one of the detectives commenced to interrogate him. On cross-examination the accused admitted he was offered a sandwich and he refused it. He now claims no coffee or water was offered to him. But the testimony shows the accused never asked for or requested anything to drink. He was allowed to smoke. Only two detectives questioned the accused at a time and there was but one substitution. This hardly amounts to questioning in relays. The questioning at the safety building did not extend over any unreasonable period of time and was broken up by a

visit to the morgue. We find no evidence of any protracted or systematic questioning of the accused.

A handwriting expert and the two detectives testified the accused wrote his own confession. The threat of physical harm of being punched in the mouth unless he told the truth was denied by the detectives. The accused testified at his trial the detectives were not rough on him. Considering all the circumstances, we do not find the accused, a man of fifty-three years of age, having had two years in high school and a trade, who wrote out his confession at 11:30 at night after some five hours of questioning was so overborne by the police as to make his confession involuntary. If the interrogation in this case is constitutionally forbidden, then hardly any suspect could be constitutionally interrogated by the police.

It is argued the trial court had a duty to submit a lesser degree of murder with its submission of first-degree murder and not guilty even though the accused did not request a lesser degree offense and specifically requested that no lesser degree be submitted. Prior to instructing the jury the accused personally and his counsel [3] both stated to the court they wanted only the questions of first-degree murder and of not guilty to be submitted to the jury. The district attorney stated he would not request the submission of a lesser degree of murder. In spite of these facts it is contended it was reversible error not to submit all the degrees of murder which could be properly submitted upon the evidence, relying on *Zenou v. State* (1958), 4 Wis. (2d) 655, 91 N. W. (2d) 208. However, *Zenou* does not hold that proposition. Some states have held that a court has the duty to instruct not only as to the offense charged but as to such lesser offenses which defendant might be found guilty of under the information and evidence, although there is no request made for such submission.[4] However, the majority of

---

[3] Counsel on this appeal was not the trial attorney.

[4] See *State v. Littlejohn* (1947), 356 Mo. 1052, 204 S. W. (2d) 750; *State v. Smith* (1946), 161 Kan. 230, 167 Pac. (2d) 594;

states holds the failure to instruct on a lesser included offense is not a ground for reversal in the absence of a request for such instruction.[5]

From an early date the rule in Wisconsin has been that unless a request is made for an instruction of the lesser included offense it is not error for the trial court not to give the instruction on its own motion even though the evidence would sustain it. *Odette v. State* (1895), 90 Wis. 258, 62 N. W. 1054; *Frank v. State* (1896), 94 Wis. 211, 68 N. W. 657. This rule has been consistently followed up to the present. *Sullivan v. State* (1898), 100 Wis. 283, 75 N. W. 956; *State v. Scherr* (1943), 243 Wis. 65, 9 N. W. (2d) 117; *Van Rite v. State* (1941), 237 Wis. 212, 295 N. W. 688; *Smith v. State* (1946), 248 Wis. 399, 21 N. W. (2d) 662. In some of the older cases it is stated the failure to give an instruction on a lesser offense although not requested is not an error which can be complained of because it is not prejudicial. See *Sweda v. State* (1932), 206 Wis. 617, 240 N. W. 369, citing *Fertig v. State* (1898), 100 Wis. 301, 75 N. W. 960. See also *Hempton v. State* (1901), 111 Wis. 127, 86 N. W. 596, for the view that an instruction restricted to first-degree murder and not guilty is favorable rather than prejudicial to the accused if there is evidence on which he might be convicted of a lesser offense.

*State v. Fouts* (1950), 169 Kan. 686, 221 Pac. (2d) 841; *State v. Hicks* (1954), 241 N. C. 156, 84 S. E. (2d) 545; *Smith v. State* (1946), 83 Okla. Crim. 209, 175 Pac. (2d) 348; *People v. Morrison* (1964), 228 Cal. App. (2d) 707, 39 Cal. Rptr. 874.

[5] *Johnson v. State* (1949), 214 Ark. 902, 218 S. W. (2d) 687; *People v. Chessman* (1951), 38 Cal. (2d) 166, 238 Pac. (2d) 1001; *People v. Harrison* (1946), 395 Ill. 463, 70 N. E. (2d) 596; *People v. Weisberg* (1947), 396 Ill. 412, 71 N. E. (2d) 671; *State v. Scott* (1951), 72 Idaho 202, 239 Pac. (2d) 258; *State v. Leahy* (1952), 243 Iowa 959, 54 N. W. (2d) 447; *Russell v. State* (Miss. 1951), 51 So. (2d) 199; *Mulder v. State* (1950), 152 Neb. 795, 42 N. W. (2d) 858; *State v. Ellis* (1951), 61 Ohio L. Abs. 434, 105 N. E. (2d) 65; *State v. Nodine* (1953), 198 Or. 679, 259 Pac. (2d) 1056; *State v. Mitchell* (1955), 3 Utah (2d) 70, 278 Pac. (2d) 618.

However, this view of prejudice might be doubted, and whether or not the lesser offense is requested would seem to be more a matter of trial strategy and waiver. The determining of instructions is not entirely within the control of the defense because the court may without any request instruct on the degrees of the offense the evidence will sustain and the state also has an interest in the matter and the right to request instructions. Thus, it would be error for the trial court not to submit the lesser included offense in an instruction if the evidence would sustain it and it is requested either by the state or by the accused.

Even if there were a duty in the absence of a request upon the trial court to instruct on the lesser included offense, the defendant has forfeited his right to assign the failure to so instruct as error because of the specific request that no such instruction should be given. Such action was not only a matter of trial tactics by the accused's counsel but actively participated in and dictated by the accused himself who wanted to gamble on an all-or-nothing basis. Because he lost he cannot now assert and blame the trial judge for allowing him to intelligently and knowingly make the choice.

The accused argues the trial court erred in admitting state Exhibits 6 and 7 into evidence. These exhibits are photographs taken by the police of the body of the victim as they found it on the floor in the doorway between the kitchen and the living room when they entered the house excepting the face and the legs to a point below the knees are covered. It is true a scissors is protruding from the body but it would appear to be embedded in clothing covering the body.

We do not find these photos to be gruesome or inflammatory in nature. They were properly admitted to show the position of the corpse at the scene of the crime. It is discretionary with the trial court to admit photographs to aid the jury in securing a clear idea of a material situation when the photographs better show that situation

than does the testimony of witnesses. *Baxter v. Chicago & N. W. R. Co.* (1899), 104 Wis. 307, 80 N. W. 644; *Baraboo v. Excelsior Creamery Co.* (1920), 171 Wis. 242, 177 N. W. 36; *State v. Carlson* (1958), 5 Wis. (2d) 595, 93 N. W. (2d) 354; Anno. Admissibility of photograph of corpse in prosecuting for homicide or civil action for causing death, 73 A. L. R. (2d) 769.

It is argued that because Exhibits 8, 9 and 10 were properly excluded by the trial court the admissions of Exhibits 6 and 7 were inconsistent. However, Exhibits 8, 9 and 10 show just the upper part of the body with its head smashed in, hair disarrayed and matted with blood and a knife stuck in the throat. These pictures taken with the testimony are gruesome and inflammatory and their admission unnecessary. It does not follow, therefore, as argued by the accused that because these pictures were not admitted in evidence that Exhibits 6 and 7 should not have been. Exhibits 8, 9 and 10 were excluded under the corollary to the rule in the *Baxter Case* that "where photographs are not substantially necessary or instructive to show material facts or conditions, and are of such a character as to arouse sympathy or indignation, or divert the minds of the jury to improper or irrelevant considerations, they should be excluded." *Selleck v. Janesville* (1899), 104 Wis. 570, 575, 80 N. W. 944.

We find no merit in the argument that the continued effort on the part of the state to have Exhibits 8, 9 and 10 introduced was prejudicial, because the jury never saw these photographs and it can hardly be said that offering evidence, the nature of which is unknown to the jury, is error.

*By the Court.*—Judgment affirmed.