KACZMAREK, by guardian *ad litem,* Respondent, vs. GEUDER, PAESCHKE & FREY COMPANY, Appellant.

*December 7, 1911—January 9, 1912.*

*Master and servant: Injury from machinery: Involuntary and auto-matic act of operator: Formation of habit: Warning of danger: Duty of master: Questions for jury: Evidence: Expert testi-mony: Hearsay: Common knowledge.*

1. The rule that an employer owes a duty of warning to an employee set at work at a machine in the operation of which there is a concealed danger which the employer knows or ought to know about, but of whose existence the employee does not and in the exercise of ordinary care cannot know, applies as well where the danger comes from an involuntary and automatic act of the employee resulting from the necessary routine movements in operating the machine (such as the pressing down of a treadle in the operation of a punch press) as where it results from some unexpected movement of the machine itself which could not be foreseen by the employee.

2. Where a boy about seventeen years old, having little previous ex-perience with a punch press, was set at work punching small pieces of tin, each in a single operation, at the rate of about thirty-five a minute, and was told to look out and not get his fingers cut off, and also told that should a piece of tin stick in the die after being punched he should take another piece of tin and remove it, and was injured by reason of an involuntary movement of his foot pressing down the treadle while he was attempting to remove a piece of tin as instructed, it was for the jury to say whether such psychological or physiological danger existed, and whether the defendant or plaintiff or both were chargeable with knowledge of it.

3. Testimony of physicians who had made a special study of the brain and nervous system, to the effect that the continuous op-eration of a punch press in the usual manner is likely to pro-duce an involuntary sequence of muscular activities which will become automatic and proceed without express brain action or will power, was within the field of expert evidence and was competent as tending to prove one material fact, namely, the existence of the danger.

4. Evidence that numerous similar accidents had occurred in the same factory through a period of years, with perfect machines, the injured employees claiming that the presses repeated with-out any pressure upon the treadle, was both competent and of

Kaczmarek v. Geuder, P. & F. Co. 148 Wis. 46.

probative force upon the question of the employer's duty to know and give warning of such danger.

5. Testimony of one who had been superintendent in another factory as to the results of his own observation of operators at work at similar machines, also that of a state factory inspector as to knowledge obtained from personal observation and by talking over the subject with foremen, was competent upon the same question.

6. Common knowledge must of necessity be largely obtained from talking with others.

7. The objection that a warning against such an involuntary sequence of muscular activities would be of no avail cannot be considered as tenable. The duty to warn is not lessened by the fact that the warning may fail of its purpose through inattention or disobedience on the part of employees.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This is an action to recover for personal injuries. On the 28th of June, 1910, the plaintiff, a boy sixteen years and eleven months of age, who had reached the seventh grade in the public schools, was set at work by the defendants operating a stamping machine or press at their tinware factory. He worked from 7 o'clock a. m. through the morning hours without difficulty, but a few minutes after commencing work in the afternoon he lost two fingers of his right hand by their being caught between the die and the punch. The machine was what is called a Bliss press, is used for stamping small pieces of tin and sheet steel, and consists in part of a die and punch. The face of the die is upward. The operator stands in front of the machine and calls the power into action by stepping with his right foot upon a treadle near the floor. One pressure of the foot upon the treadle causes the punch to come down upon the die, then rise to a point about five inches above the die and stop. If the operator steps upon the treadle and immediately removes his foot the punch will descend but once if the machine be in perfect order, and it was admitted in the case that it was in perfect order at the time.

"Prior to his injury the plaintiff worked in a stove factory three months, making elbows. He worked in a bed factory,

at all sorts of work, for about a year, but did not use machinery. Afterwards he operated for one month a press, something like the one by which he was injured. After that he went to the defendant and asked for work, and defendant's foreman asked him whether he had ever worked on a punch press, and he said that he had. He was set at work with the press by which he was injured, and when he was set at work the foreman said to him: 'Be careful you don't cut your fingers off.' The foreman showed him how to work on the press. He took a number of pieces of tin in his left hand; took one of them from his left hand with his right hand and placed the tin on the die; stepped on the treadle and removed his foot. One revolution pressed the tin into the required shape and threw it off the die, but the foreman told him that a piece of tin might stick to the die after it was pressed, and that he should, if that happened, take one of the pieces of tin that was to be stamped and loosen the tin and throw it off the die."

When working at ordinary and usual speed the machine stamped about thirty-five pieces of tin per minute. The plaintiff proceeded to operate the machine as directed successfully through the morning hours, and stopped at 12 o'clock for a recess of twenty-five minutes. Three minutes after he commenced work again in the afternoon a piece of tin already stamped stuck on the die, and with his right hand he took one of the pieces of tin which he held in his left hand, and attempted to push out the piece of tin which was stuck on the die, and it slipped so that his fingers went under the punch. At the same time his foot involuntarily came down upon the treadle, the punch descended and cut off his fingers. So far as the evidence shows, this seems to have been the first time in his experience that a piece of tin, after being pressed, remained fast on the die.

The plaintiff's claim in brief is that his injury resulted from the automatic action of his foot, as the result of a habit formed by the continuous and repeated operation of hands and foot in the same order; that he did not know or understand that such a habit would be formed, and that his employer

either did know or ought to have known the fact, and should have warned him thereof; and not having done so was guilty of negligence which was the proximate cause of his injury.

The jury returned a general verdict for the plaintiff, and the defendant appealed.

*C. H. Van Alstine,* for the appellant.

For the respondent there was a brief by *Doerfler, Green & Bender,* and oral argument by *Christian Doerfler.*

WINSLOW, C. J.    When an employer sets an employee at work at a machine in the operation of which there lurks a concealed danger which the employer either knows or ought to know about, but of whose existence the employee does not know, and cannot know by the use of ordinary care, the employer is guilty of negligence if he give the employee no sufficient warning thereof, and if under such circumstances the employee suffers injury by reason of such concealed danger, while himself exercising ordinary care, the employer's negligence is actionable.    These principles are so familiar that citation of authorities is unnecessary, and they apply with greatest force to young and inexperienced employees.    Whether the danger result from some unexpected movement of the machine itself which could not be foreseen by the employee, or whether it result from an automatic and involuntary action resulting from the necessary routine movements in the operation of the machine, can make no logical difference with the principle itself.    The latter danger may be far greater than the former.    It is true that it will probably be easier of ascertainment, and hence the cases may perhaps be rare where the employee can be held to be excused from not knowing of the danger of the formation of the habit; but unless the court can say as matter of law that he must or ought to have known the danger, the principles requiring warning by the employer who knows or ought to know must logically apply to the latter case as well as to the former.    The things of the mind are

VOL. 148 — 4

often just as real and just as important as the things of iron or steel.

The present case, though in some degree novel, is quite simple. The plaintiff's claim is, in brief, that the monotonous and continuous repetition of the same movements of hands and foot in regular order, minute after minute and hour after hour, tended to produce and did produce an automatic unconscious action or habit, called, if you please, a sequence of muscular activity, as a result of which the muscles continued to act involuntarily and without action of the brain; that the fact that such results follow from the constant repetition of the same movements in the same order is well known to scientists and ought to be known to employers using such machines; and that this unconscious habit or involuntary sequence of muscular activities was not known by him and was the proximate cause of his injury. He points to the fact that when a piece of tin sticks on the die there is no substantial change in the sequence of movements up to the time of the pressure of the foot. The right hand still continues to move as before, taking a piece of tin from the pile in the left hand, advances it toward the die, and just as it gets to the die the pressure of the foot, which has for hours been made just at that time and in that order, must naturally come. By their general verdict for the plaintiff the jury necessarily found that there was a concealed danger, that the employer either knew or ought to have known of this concealed danger, that the employee did not know it, and could not have ascertained it by the exercise of ordinary care, and that the concealed danger was the proximate cause of the accident.

We cannot say as matter of law that this psychological or physiological danger may not exist and be just as real a danger as a danger resting in some unexpected movement of the machine itself; nor can we say in this case as matter of law either that there was no evidence to charge the defendant with knowledge of the danger, or that the plaintiff must be

charged with knowledge thereof; hence the question was necessarily one for the jury, and unless there were prejudicial errors in the admission of evidence or the submission of the case in the charge the judgment must be affirmed.

No complaint is made of the charge, and really the only substantial contentions in the case are (1) that there was no sufficient competent evidence to show that the defendant either knew or ought to have known that such a habit was likely to be formed, and (2) that no warning which could have been given would be likely to have any effect so long as the movement is involuntary.

Among other evidence relied on by the plaintiff to show the likelihood of the formation of such unconscious habit and that the defendant ought to have known of the danger of its formation was the evidence of two physicians who had made special study of the brain and nervous system. These gentlemen testified, against objection, in answer to hypothetical questions, that in their opinion the continuous operation of the machine in the manner required would be likely to produce an involuntary sequence of muscular activities which would become automatic and proceed without express brain action or will power. This testimony seems to us fairly within the field of expert knowledge. The objection that it does not follow from this fact that employers using presses know that such automatic action would result does not make the testimony incompetent. If the testimony tends to prove that such automatic action will be likely to result, it tends to prove one material fact. The question whether employers ought to know that fact must also be proven, but that need not necessarily be proven by the same evidence.

As tending to prove this second necessary fact it was shown by sufficient evidence that more than one hundred of this style of press were in use in defendant's establishment, and that accidents of this nature have been frequently occurring every year for many years, and for the last three years at the

rate of twenty a year; that is, accidents where employees would get their fingers cut off or mangled in perfect machines, and claim that they did not touch the treadle, but that the punch came down a second time without action of the foot. Of course, this was an impossibility with a perfect machine, as pointed out in the case of *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, 71 N. W. 434.

It is said that this testimony has no probative force on the question of the employer's duty, but we cannot agree with this contention. It is true that an employer is not an insurer of the safety of his employees, but he owes them the duty of providing reasonably safe machinery, and using ordinary care at least to discover concealed or latent dangers in its use, and especially does he owe this duty to minors. If, year after year, these accidents have been going on with perfect machines, and no sufficient explanation, it seems to us entirely proper for that fact to be shown in order that the jury may say whether or not the employer ought not to have investigated and ascertained the cause. That investigation and careful study would have led to the obtaining of the information brought out in this case there can be little doubt. The evidence showed that at least one shop superintendent in Milwaukee using similar machines had known of the unconscious muscular habit likely to be formed in the use of such machines for nearly twenty years. Mr. Wolter, who was shop superintendent in the tinware establishment of the Kieckhefer Bros. Co. for a number of years prior to 1899, testified that there were in use in the factory numbers of these same machines; that he himself discovered the danger of the formation of the habit, and that he warned every beginner at such a machine of the danger of forming the habit and of forgetting himself and stepping on the treadle; and that he also warned him if the piece of tin stuck in the die, then he should stop at once and notify the foreman in his department.

This seems to be pretty conclusive proof that an employer who was inclined to pay attention to the question and devote thought to it could solve the mystery of these numerous and constantly recurring accidents with perfect machines. At least it is in our judgment evidence from which the jury could so conclude. There was some additional evidence on this point given by William Straub, a state factory inspector, whose duty for three years has been to investigate accidents in factories of this kind. He testified that it was matter of common knowledge among employers using presses of this kind that an operator will very often unconsciously set the treadle in motion with his foot at a time when he has skipped a feed with his hands. He testified further that he obtained his knowledge from seeing such involuntary movements by operators himself and by talking it over with foremen. The objection that the knowledge obtained by talking with foremen is incompetent cannot be sustained. Common knowledge must largely be obtained from talking with others.

We conclude that there was sufficient evidence to take to the jury both the question as to the formation of such an unconscious habit, and the question whether the likelihood of its formation should have been known to the defendant.

The objection that no warning would be of any avail cannot be considered as tenable. Many warnings fail in their purpose owing to inattention or disobedience on the part of employees, nevertheless the duty to warn is not thereby lessened. If every operator were told of the danger of the formation of the habit and the imminent risk of injury thereby, and enjoined to step back from his machine a step whenever the feed missed from any cause, so that there would necessarily be a conscious and complete break in the sequence of muscular activities and a practical impossibility of placing the foot on the treadle, who can now say how many such accidents would be prevented? Certainly every employee who

followed the directions would be safe.    And if no more than twenty-five per cent. of the employees followed them the result would be well worth the trouble.    We are unable to say that a warning of this kind would be of no avail.

*By the Court.*—Judgment affirmed.

MARSHALL and VINJE, JJ., dissent.