ROBERTS, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 25, 26. Argued January 3, 1969.—Decided February 7, 1969.*
(Also reported in 164 N. W. 2d 525.)

538

540

For the plaintiff in error there was a brief and oral argument by *Carroll B. Callahan* of Columbus.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

HALLOWS, C. J.   It is not and cannot be seriously contended that Roberts did not shoot and kill Mrs. Elfriede Howe with a 12-gauge shotgun about three o'clock a. m. on March 11, 1967, in her home in Columbus, Wisconsin. Roberts was an acquaintance of Mrs. Howe, the mother of two children whose husband was in Vietnam. Early in the evening of March 10th Mrs. Howe and her friend Mrs. Kath visited several taverns in and around Columbus. In these taverns they saw and talked to Roberts. On the previous day Roberts had borrowed Mrs. Howe's automobile and at one tavern an argument arose between them concerning the car. Mrs. Howe objected to the attentions of Roberts and asked the bartender to remove him from the bar but nothing was done.

After Mrs. Howe and Mrs. Kath left the tavern, the argument with Roberts continued and Mrs. Howe told Roberts to leave her alone. Roberts is reported to have told Mrs. Howe she would be sorry she made a fool out of him in the tavern. This apparently referred to a remark Mrs. Howe made that Roberts should leave her alone and he was no good. Upon returning home accompanied by Mrs. Kath, Mrs. Howe locked the door. About 2:30 in the morning Mrs. Howe received a phone call

and she told her caller to leave her alone and hung up the receiver.

The prosecution claims Roberts came to Mrs. Howe's home about three o'clock in the morning, broke the glass in the door and entered the kitchen holding a 12-gauge shotgun. Mrs. Kath testified Roberts told Mrs. Howe several times he was going to kill her before the night was over but he was going to let her suffer a while first. Roberts again accused Mrs. Howe of making a fool out of him. While Mrs. Kath was out of the kitchen, she heard a shot and returning saw Mrs. Howe lying on the floor between the kitchen and the dining room and Roberts standing in front of her with the shotgun in his hand.

Roberts claims he was intoxicated at the time of the shooting and the record is replete with testimony of his heavy drinking for many years and during the evening prior to the killing. According to his testimony, on the day before the shooting he consumed a pint of brandy at work and five large glasses of beer after work before dinner. He then returned Mrs. Howe's car and he and Mrs. Howe consumed several drinks of water and brandy. At one tavern that evening he drank two to four 12-ounce bottles of beer and between three and six brandy drinks. At another tavern Roberts claimed he drank between 10 and 20 drinks of 84-proof brandy and another drink in the third tavern about 12:30 a. m. From that time on Roberts claims he was unable to recall any events until he was awakened in jail about six hours later.

It is claimed that in the last tavern Mrs. Howe exclaimed so others could hear that Roberts was an ex-convict, had beaten his mother and former wife, and was no good. At the trial, several bartenders testified; Roberts took the stand; and medical testimony was introduced by both sides. The trial court found Roberts was not drunk when he shot Mrs. Howe.

Roberts argues he was drunk at the time of the shooting and was a chronic alcoholic which condition he claims

is a separate affirmative defense to criminal responsibility. This is the first case in this state which raises chronic alcoholism per se as a separate and independent defense to the charge of first-degree murder. The argument is based on the premise that chronic alcoholism is a disease which incapacitates a sufferer from responsibility for his acts because the disease determines his action.

We think there is a distinction between chronic alcoholism and an addiction to alcohol even if such addiction could be considered such a disabling disease. Not every person commonly called a "chronic alcoholic" is addicted to the point where he has a physiological or psychological dependency upon alcohol and his drinking is so involuntary and compulsive that one might argue he is irresponsible for his acts. No doubt the testimony classified Roberts as a chronic alcoholic at least to a moderate or mild degree, but the evidence is clear he could control his drinking up to the point of intoxication and was not addicted to alcohol.

Two federal courts have held chronic alcoholism to be a defense to the charge of public drunkenness, but these holdings are not controlling. In both these cases there is a direct relationship between the conduct prohibited and the alleged disease of alcoholism. In *Driver v. Hinnant* (4th Cir. 1966), 356 Fed. 2d 761, relying on the rationale of *Robinson v. California* (1962), 370 U. S. 660, 82 Sup. Ct. 1417, 8 L. Ed. 2d 758 (a drug-addiction case), the court held it was cruel and inhuman punishment contrary to the eighth amendment of the United States Constitution to punish a chronic alcoholic for public drunkenness because chronic alcoholism was a disease and the accused's act of public intoxication was "compulsive as symptomatic of the disease." The court pointed out with respect to other behavior not characteristic of confirmed chronic alcoholism a person would be adjudged as any person not so afflicted. In *Easter v. District of Columbia* (D. C. Cir. 1966), 361 Fed. 2d 50, discussed

by the trial court and relied on by Roberts, the court, while approving the holding in *Driver,* based its decision upon a statutory definition of chronic alcoholism contained in the District of Columbia's Code as a person who "has lost the power of self-control with respect to the use of such beverages." This court, too, pointed out that voluntary intoxication was not a defense.

Roberts also relies on *State v. Freiberg* (1967), 35 Wis. 2d 480, 151 N. W. 2d 1, as creating a distinct and separate defense of chronic alcoholism. We think not. *Freiberg's* language must be taken in context of an abandonment in violation of sec. 52.05, Stats. This crime requires a desertion or a wilful failure to support without just cause. And, the statute makes the fact of desertion or refusal prima facie evidence of wilfulness. What was said in *Freiberg* concerning the inability to work and thus negating the required *mens rea* must be limited to such facts. While sec. 939.42 (2), Stats.,[1] was not cited, the rationale expressed in *Freiberg* that chronic alcoholism might be a defense was in conformity with sec. 939.42 (2), which allows a defense of intoxication when its presence negates a *mens rea,* which is a necessary element of the crime charged.

The *Driver* and the *Easter Cases,* as well as others, were rejected by the United States Supreme Court in *Powell v. Texas* (1968), 392 U. S. 514, 88 Sup. Ct. 2145, 20 L. Ed. 2d 1254. Powell, a chronic alcoholic, was convicted of public drunkenness, and, in affirming the conviction, the court pointed out the lack of an acceptable definition of the term "chronic alcoholism" and the lack of medical agreement on its manifestations. While stating the record did not show Powell suffered from an

---

[1] "939.42 **Intoxication.** An intoxicated or a drugged condition of the actor is a defense only if such condition:

". . .

"(2) Negatives the existence of a state of mind essential to the crime."

irresistable impulse to drink and to get drunk in public and was unable to control his performance, the court went on to state it had "never articulated a general constitutional doctrine of *mens rea*." Consequently, a state can create a crime which does not contain a *mens rea* as an element. *Powell* thus rejects the thesis that chronic alcoholism as a matter of law destroys criminal responsibility. The dissent in *Powell*, recognizing chronic alcoholism as a disease, advocated a restrictive doctrine that chronic alcoholism was such a defense when the unlawful conduct is a "part of the pattern of his disease and is occasioned by a compulsion symptomatic of the disease."

Roberts was found not intoxicated and this is sustained by evidence which the trial court had a right to believe. We cannot on this record find, which would be necessary for a reversal, that Roberts as a matter of law was not only drunk but drunk involuntarily and but for that he would not have shot Mrs. Howe. Roberts could control his drinking and therefore any intoxication was not involuntary. Besides, his shooting another person and his entering another's house without consent and with intent to commit a felony are not characteristics or an involuntary part of the pattern of chronic alcoholism or symptomatic of the disease.

Roberts argues he has a defense under sec. 939.42 (1), Stats.[2] If Roberts had been intoxicated to the point that he could not distinguish between right and wrong in respect to the shooting of Mrs. Howe when he shot her (old *M'Naghten* test) and such intoxication was involuntary because he suffered from a type of chronic alcoholism which compels involuntary drinking to satisfy a

---

[2] "939.42 **Intoxication.** An intoxicated or a drugged condition of the actor is a defense only if such condition:

"(1) Is involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed; or . . . ."

psychological or physiological dependency thereon, Roberts would have a defense. But the evidence does not prove such involuntariness or drunkenness.

It is also quite plain that under sub. (2) of sec. 939.42, Stats., Roberts has no defense because although he was drinking he did intend to kill Mrs. Howe. On several occasions he stated to Mrs. Howe he was going to kill her. The shooting was no accident. The trigger pressure of the gun was an unusually high pressure of 14 pounds and the gun was not likely to go off by accident. The trial court was not required to believe Roberts' testimony that he had blacked out around 12:30 in the morning and had no recollection of shooting Mrs. Howe.

The degree of intoxication in relation to the ability to form and entertain a *mens rea* has been discussed by this court in previous cases. In *Smith v. State* (1946), 248 Wis. 399, 21 N. W. 2d 662, intoxication not to the degree sufficient to prevent the formation of an intent to commit first-degree murder was held not to be a defense. In *Lasecki v. State* (1926), 190 Wis. 274, 208 N. W. 868, the evidence warranted the finding that defendant was so intoxicated he could not form a specific intent to kill anyone. In *State v. Christiansen* (1936), 222 Wis. 132, 267 N. W. 6, some evidence warranted a conclusion that the accused was intoxicated to a degree he could not form an intent, but there was also abundant testimony from which the jury could come to an opposite conclusion. *See also* Annot. (1966), *Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge,* 8 A. L. R. 3d 1236. In the instant case, the trial court found Roberts' drinking did not impair his capacity for entertaining a felonious intent and we cannot say that it was in error. We think sec. 939.42, Stats., has no application to the facts.

Roberts contends the evidence was insufficient to sustain the conviction for burglary. On the record, Rob-

erts was charged with armed burglary. Sec. 943.10 (1) (a) and (2), Stats. But the court in finding him guilty spoke of a violation of only sec. 943.10 (1) (a). The certificate of conviction referred to sec. 943.10 (1) (a) and (2). We accept the pronouncement of the court as being its intent and hereby modify the conviction judgment to burglary only. This has no effect upon Roberts' incarceration because the sentence remains the same and is concurrent with his life sentence for first-degree murder.

We think, further, the evidence sustains the burglary conviction. The door was locked. The glass was broken from the outside and Roberts was inside the home immediately thereafter. True, this is circumstantial evidence but taken with the threat earlier in the night, a reasonable inference may be drawn that Roberts entered the house without Mrs. Howe's consent. The threats before entering, the threats after entering, and shooting her, constitute evidence of the intent to commit a felony when entering without consent. Cf. *Galloway v. State* (1966), 32 Wis. 2d 414, 145 N. W. 2d 761, 147 N. W. 2d 542. Sometimes circumstantial evidence shouts while oral testimony talks. We think this is a shouting case.

Roberts claims several evidentiary errors and prejudicial rulings deprived him of a fair trial. When a case is tried to the court, this court on review looks upon errors in the receipt of evidence somewhat less critically on the issue of prejudice than when the case is tried to the jury. This is especially true when the conviction has been allowed to stand by the trial court after it has had its attention directed to the alleged errors on motions after verdict and thus it has had a chance to re-evaluate its fact-finding process. *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671; *State v. Cathey* (1966), 32 Wis. 2d 79, 145 N. W. 2d 100; *Ray v. State* (1967), 33 Wis. 2d 685, 148 N. W. 2d 31.

One of the expert psychiatrists for the state prepared a list of questions to be asked of him and also aided the prosecuting attorney during cross-examination of other witnesses. While such action may go to the bias of the witness, his testimony is not incompetent. Objection is made that the psychiatrist gave his opinion but not to a reasonable medical certainty but rather positively as his conclusion. No objection was made at the trial and in the absence of such objection, the evidence was admissible. Nor do we consider such testimony to be a basis for the argument Roberts did not receive a fair trial.

It is also contended that nonmedical and immaterial evidentiary facts elicited from Roberts were used as a basis for expert opinions and this deprived him of a fair trial. These facts dealt with Roberts' background and personal history and were a basis for an expert opinion. Many of these facts were also testified to by Roberts. We see no unfairness in the admission of this evidence. But Roberts also argues the admission of this evidence violated his constitutional privilege against self-incrimination. Thus he raises the constitutionality of the compulsory nature of the mental examination under sec. 957.27, Stats. We think this section is constitutional; it is only the scope of the examination and the use of the accused's statements which might render it unconstitutional in its application in some cases if safeguards were not devised.

In *State ex rel. La Follette v. Raskin* (1967), 34 Wis. 2d 607, 150 N. W. 2d 318, this court fashioned a safeguard remedy of a bifurcated or sequential trial to avoid admitting testimony on the issue of guilt obtained in a mandatory psychiatric examination under sec. 957.27, Stats. This decision did not assume the expert testimony would relate only to the opinion of the sanity of the accused but would encompass every fact or circumstance disclosed in the mental examination which the psychiatrist or examiner wished to know in his evaluation of

the mental state of the accused and which might affect the accused's fifth amendment right not to testify against himself. In this case, counsel reserved the right to object to the testimony of the experts at the time the examination was ordered and objected again at the trial. This is no longer the correct procedure. He should have asked for a bifurcated or sequential trial if he had reason to believe Roberts had disclosed anything relative to his guilt to the prosecution's expert witnesses.

Roberts does not claim he was tricked into not asking for a bifurcated trial or that he was surprised by the testimony of his examiners. Since the trial court can appoint expert witnesses under sec. 957.27 (1), Stats., and the state can have the accused examined under the circumstances set forth in sec. 957.27 (2), we think a bifurcated trial should be granted in such cases upon request of the defendant. Such request shall be deemed a prima facie showing of cause required by *Raskin*.

No error was committed in allowing a psychiatrist to testify as to the opinions of two psychologists to whom Roberts was referred. The psychiatrist's own opinion was not based upon the opinions of the psychologists. But even if the psychiatrist's opinion was in part influenced by the opinions of the psychologists, this would not disqualify the testimony. Many times doctors' opinions are dependent in part upon facts found by others or upon the opinions of others upon whom they rely in their practice. Psychiatrists customarily rely on the reports of psychologists in the aid of diagnosis. *Sundquist v. Madison Railways Co.* (1928), 197 Wis. 83, 221 N. W. 392; *Rupp v. Travelers Indemnity Co.* (1962), 17 Wis. 2d 16, 115 N. W. 2d 612; and *Vinicky v. Midland Mut. Casualty Ins. Co.* (1967), 35 Wis. 2d 246, 151 N. W. 2d 77.

We find no merit in the contention the court erred in allowing Officer Jones to testify. Roberts stated he did

not want to make a phone call in response to a question when the officer was jailing him. The answer was used to indicate Roberts was not drunk at that time. Whether one wishes to make or does not wish to make a telephone call does not seem to be very probative of his sobriety or drunkenness. Be that as it may, the question was not a part of any custodial questioning as defined in *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694. We consider this incident to be an attempt of the law-enforcement officer to give Roberts part of the *Miranda* warning and to inform him of his Wisconsin right to make a telephone call upon being arrested. *See Miller v. State* (1967), 35 Wis. 2d 454, 151 N. W. 2d 157; cf. *State v. La Fernier* (1967), 37 Wis. 2d 365, 155 N. W. 2d 93.

Four "minor" errors are alleged as depriving Roberts of a fair trial. We find no factual basis in the record for claiming he was improperly restricted in his cross-examination or in his examination of a "hostile witness." There is no merit in the claim Roberts was refused the opportunity to examine the gun. Permission was granted if Roberts produced a qualified firearms expert, which was not done. There is no error in failure to produce the reports of the firearms experts. These are not subject to pretrial discovery and do not come under the limited rule of *State v. Richards* (1963), 21 Wis. 2d 622, 124 N. W. 2d 684, which allows prior statements of a person to be obtained by the defense after such person becomes a witness. *See also State ex rel. Byrne v. Circuit Court* (1962), 16 Wis. 2d 197, 114 N. W. 2d 114; *Ramer v. State* (1968), 40 Wis. 2d 79, 161 N. W. 2d 209.

The last claimed error involves the refusal to allow a psychologist to testify concerning Roberts' mental condition. The trial court refused this testimony but allowed an offer of proof to be made. We think the psychologist's testimony is admissible. In *Casimere v. Herman* (1965), 28 Wis. 2d 437, 137 N. W. 2d 73, this court discussed but

did not decide whether a clinical psychologist was qualified to give his opinion as to future pain and suffering in a civil-automobile-accident case. In *Novakofski v. State Farm Mut. Automobile Ins. Co.* (1967), 34 Wis. 2d 154, 148 N. W. 2d 714, this court recognized that limited testimony of a medical nature by one not licensed to practice medicine was admissible. In *Nelson v. State* (1967), 35 Wis. 2d 797, 151 N. W. 2d 694, we held that a defendant in a criminal case did not have a right to be examined by a psychiatrist under sec. 51.01 (2), Stats., and the statute was satisfied by a medical practitioner having ordinary qualifications in the field. These cases are based upon the rationale that if a person has qualifications in a field, he may testify within the area of his competency. As the frontiers of knowledge are pushed back we find it increasingly difficult to compartmentalize many areas of knowledge with exclusiveness. It is the particular qualifications of the witness in relation to the particular issue which should control rather than the label of a profession or trade. *See* on the problem, Gaines, *The Clinical Psychologist as an Expert Witness in a Personal Injury Case* (1956), 39 Marquette L. Rev. 239.

We think a qualified psychologist, such as Dr. Alexander, may testify to his opinion of the mental condition of the person he has examined. We realize there is split authority on this point, but we are convinced the mental state of a person is not exclusively in the realm of medicine. *See* Annot. (1961), *Qualification of Nonmedical Psychologist to Testify as to Mental Condition or Competency,* 78 A. L. R. 2d 919. While it was error not to admit the psychologist's testimony, it was not prejudicial. This testimony was cumulative in nature to that of two medical doctors which was not accepted by the trier of the fact. Furthermore, on this appeal the plea of insanity has been abandoned. It can hardly be said that failure to consider this testimony resulted in an unfair trial. An accused is entitled to a fair trial, not a perfect one.

Lastly, we find no merit in the argument the prosecution refused to supply defense counsel with copies of hypothetical questions before they were asked of the witness. While good practice might require such questions to be furnished, failure to do so was not prejudicial and did not affect the fairness of the trial. We think Roberts received a fair trial and there was no miscarriage of justice.

*By the Court.*—The judgment of conviction for murder is affirmed; the judgment of conviction for armed burglary is modified to burglary; and the order denying postconviction motions is affirmed.