E. D. WESLEY COMPANY, Respondent, v. CITY OF NEW
BERLIN, Appellant.

*No. 334. Submitted under sec. (Rule) 251.54 February 6, 1974.—*
*Decided March 18, 1974.*
(Also reported in 215 N. W. 2d 657.)

The cause was submitted for the appellant on the brief of *Clayton A. Cramer* and *A. Warren Cahill,* both of Waukesha, and for the respondent on the brief of *Francis X. Krembs* of Milwaukee.

HALLOWS, C. J.   The public works contract provided that Wesley was to furnish "all labor, materials, and equipment required to perform and complete the contract upon piping, heating, and service pumps in connection with the construction of a pump station and underground reservoir for the net contract price of $80,604.00." Attached to the contract was the specific contract involving the specifications and a guarantee clause providing as follows:

"GUARANTEE:
"Each contractor shall be responsible for his own work and shall make good, repair or replace, at his own expense, as may be necessary any defective work, or material, which may show itself within one (1) year after issuance of final certificate of the engineers, except where any specification calls for a longer period."

The trial court held the city of New Berlin failed to establish by competent evidence that the offsets claimed by it in the sum of $6,082.04 represented the cost of repairs necessitated by alleged defective work or materials provided by Wesley; and therefore disallowed them and found the balance due on the contract was the sum of $9,531.27.

The offsets claimed by the city of New Berlin involved three items: Damage to the fire pump engine in the sum of $1,019.03; damage to the roof of the pump house in the sum of $119.69; and damage to a booster pump in the sum of $4,943.32. It was stipulated these amounts were

reasonable for the cost of the repairs; that due demand had been made therefore and Wesley refused to pay on the ground it was not legally responsible for such payment. On this appeal the city of New Berlin claims that because it had not accepted the work under the contract, Wesley, the contractor, was absolutely liable or strictly liable for the repairs. It is Wesley's position that the repairs were the obligation of the owner and it had performed all the conditions of the contract.

The facts are not materially in dispute. In order to furnish water to the industrial area, the city of New Berlin had built a well, a pump house, and an underground reservoir. As part of this facility, there were to be installed two large electrically driven booster pumps and a backup fire pump driven by a natural gas engine. The booster pumps took water from the reservoir and pumped it into the distribution system. The fire pump was to provide an auxiliary source of power to provide the water supply and fire protection in case of failure of the booster pumps.

On February 9, 1967, about a month after the fire pump had been installed, there was a fire in the well house. It was discovered the drive unit of the fire pump had overheated and the band around the engine block had been badly scorched. This was attributed to improper cooling when it was discovered that an elbow in the cooling system was disconnected. Wesley did nothing about repairing the pump so the city of New Berlin had the repairs made by Charles Equipment Company.

Early in 1967 it was necessary to remove one of the booster pumps to replace some seals which were leaking. To do this, an A-frame tripod device was erected on the roof of the well house and the booster pump was lifted by a chain through a hole in the roof. In the process, the roof was damaged. Wesley assumed the cost of the repairs to the seals but refused to pay the cost of re-

pairing the roof, which amounted to $119.69. The repairs to the roof were made and paid for by the city of New Berlin.

On December 9, 1967, some four to six weeks after the water facility was in operation, one of the booster pumps broke down. It was observed there was a crack in the coupling in the magnetic drive of the pump. Fairbanks-Morse and Electric Machinery, the manufacturer and distributor, respectively, refused to replace the pump under their warranty, claiming the damage was caused by "torque reversal" which was an operating problem and not a defect. Wesley likewise refused to assume responsibility for this damage. Torque reversal was explained at the trial by a witness for Wesley to be a phenomenon caused by a failure of current for a second or two in the electric line which reverses the direction of the driving force of the electricity. More technically, it was testified that a torque reversal in rotating electrical apparatus is caused by two electromotive forces acting in a nonunified direction brought about by *inter alia* power interruption.

There is no dispute that a final certificate of the project engineer was never issued. Based on this fact, the city of New Berlin claims the contractor has the obligation under the contract to furnish a working unit and until it is accepted by the owner, the contractor assumes all the risks. After acceptance, it is conceded that General Condition 19 requires the contractor to make only those repairs or replacements which are necessitated by defective work or material. While the trial court did not specifically consider this issue, it is raised on appeal. If the city of New Berlin's position is correct, then the trial court was in error in denying its claimed offset.

A public contract could provide for liability as claimed by the city of New Berlin. It may also provide that a building contractor cannot recover compensation unless

he has first secured the approval of an architect or a third person in which case the contract makes such approval a condition precedent to recovery. 17A C. J. S., *Contracts,* pp. 752, 753, sec. 499 (2) ; 64 Am. Jur. 2d, *Public Works and Contracts,* pp. 979, 981, secs. 116, 118. The instant contract appears to require at least as an implied condition precedent to the contractor's right to recover that there be issued a final certificate accepting the contractor's work. However, the city of New Berlin also argues even if this were not so, Wesley could not recover because some of the damages were caused by defects in work and material under the guarantee clause. Under the guarantee clause, the damage to the booster pump was not proved to be caused by a defect in the booster pump. The only evidence showed the cause to be an electrical phenomenon which was neither the fault of Wesley nor the manufacturer of the pump. This item of the damages is not within the scope of the contractor's liability either before or after acceptance of the work. The present contract does not make the contractor an insurer. The risk of loss to property generally follows ownership unless the contract provides otherwise. One may own property and have its possession for the purpose of risk of loss without acceptance for the purpose of payment.

The leaking seals to the booster pump were the responsibility of Wesley and the damages to the roof in replacing it are attributable to Wesley. It is no defense that the damages were caused by another who was performing the repair work Wesley should have done. In respect to the fire pump, there may have been insufficient proof of a defect if acceptance of the work had been shown, but before such acceptance, the contractor has the burden of showing his work meets acceptance. It is the contractor's duty to get his work accepted and the longer he delays, the greater risk he takes. An elbow

on a cooling unit would not be taken off unless someone wanted to sabotage the plant. The more logical presumption which is permitted prior to acceptance of the work is that the elbow can come off due to poor workmanship or a defect. This is the responsibility of the contractor. Consequently, the offsets for the damages to the roof and the fire pump should have been allowed, and the judgment must be so modified.

This is not a question of the findings being against the great weight and clear preponderance of the evidence. The trial court was correct in not making findings of fact. The court held as a matter of law that there was insufficient evidence; such a holding does not give rise to negative findings or any finding but is a statement of law that there is insufficient evidence to make any findings.

New Berlin also argues it was error for the trial court to admit testimony of one Mr. Bresee because it was based on written hearsay. During the trial, Wesley offered in evidence a pamphlet concerning torque reversal which was excluded because it had not been established that this booklet had any standing in the trade so as to qualify under the rule of *Lewandowski v. Preferred Risk Mut. Ins. Co.* (1966), 33 Wis. 2d 69, 146 N. W. 2d 505.[1] Wesley then put Mr. Bresee on the stand, the sales engineer for Electric Machinery. Apparently Bresee was qualified as an electrical engineer, being a graduate of South Dakota State University, with seventeen years' experience as an employee with Electric Machinery. He testified he was familiar with the pump house and with the torque reversal phenomenon but his experience with the latter was limited to his experience in investigating torque reversal at compressor installations and his academic knowledge was based upon the pamphlet. New

---

[1] *See also:* Wisconsin Rules of Evidence, 59 Wis. 2d Rp. 253, sec. 908.03 (18).

Berlin objected to the opinion of Mr. Bresee on the ground he was not a qualified expert on torque reversal if his knowledge was based on the pamphlet which was held to be inadmissible. The trial court denied the objection on the ground it did not go to the qualifications of an expert but went to the weight of his opinion.

The trial court was correct. Most expert opinions are based partly upon hearsay; the opinion of an expert is accepted because he is in a position to accept or reject the hearsay because of his expertise or knowledge of what hearsay evidence should be relied upon by him in the affairs of everyday life. Thus a physician's opinion or diagnosis is based in part upon facts given to him by nurses and medical reports, of which he has no personal knowledge. We pointed this out in *Vinicky v. Midland Mut. Casualty Ins. Co.* (1967), 35 Wis. 2d 246, 151 N. W. 2d 77; *see also: Rupp v. Travelers Indemnity Co.* (1962), 17 Wis. 2d 16, 20, 115 N. W. 2d 612; *Roberts v. State* (1969), 41 Wis. 2d 537, 164 N. W. 2d 525 (psychiatrist relied on opinions of psychologists). In the recently adopted Wisconsin Rules of Evidence, it is provided in sec. 907.03:

"**907.03 Bases of opinion testimony by experts.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." 59 Wis. 2d Rp. 209.

By way of explanation, the Judicial Council Committee Note to Rule 907.03 suggested:

"The second sentence broadens the rule of permissible data. Wisconsin has approved such practice with respect to medical experts in *Vinicky v. Midland Mut. Cas. Ins.*

*Co.*, 35 Wis. 2d 246, 151 N. W. 2d 77 (1967), and *Roberts v. State,* 41 Wis. 2d 537, 164 N. W. 2d 525 (1969); and therein commented favorably upon McCormick's view which supports this portion of the rule. However, earlier Wisconsin cases both support, *Kaczmarek v. Geuder, P. & F. Co.,* 148 Wis. 46, 134 N. W. 348 (1912), and reject, *Schumacher v. Carl G. Neumann D. & I. Co.,* 206 Wis. 220, 239 N. W. 459 (1931), hearsay as a basis for expert opinion." 59 Wis. 2d Rp. 209.

By review, Wesley argues that interest should have been allowed from the date of the demand for payment, *i.e.,* November 28, 1967, rather than commencing from the date of trial. Wesley is entitled to interest from the date of breach of the contract if his claim is liquidated at that time. 5 Corbin, *Contracts* (1964), pp. 280, 281, sec. 1046. For this purpose, the debt is regarded as liquidated if the amount due can be determined by mere mathematical computation. 5 Corbin, *supra,* p. 297, sec. 1048. *See also: Necedah Mfg. Corp. v. Juneau County* (1932), 206 Wis. 316, 237 N. W. 277, 240 N. W. 405. A person is entitled to recover interest on independent items of damage from the time that the probable pecuniary amount or money value thereof was owing and could have been computed or liquidated to a reasonable certainty by reference to the current market or reasonable value. In the present case, the amount of damage to the booster pump was not in dispute; the dispute centered on the liability to pay the amount. At the time of demand, the city of New Berlin under its contract was not obligated to pay at that time because it had not accepted the work. Consequently, until the payment was due, no interest could accrue. The trial court applied the proper rule as to interest.

*By the Court.*—The judgment is reversed, with direction to enter a judgment consistent with this opinion; no costs to either party.